Submitted on briefs January 12; affirmed January 23, 1934.

## STATE *v.* CLAYPOOL

(28 P. (2d) 882)

*James L. Conley,* of Portland, for appellants.

*Lake M. Bechtell,* District Attorney, of Prineville, for respondent.

RAND, C. J.   This is an action brought by the state to recover upon an undertaking given pursuant to section 27-1724, Oregon Code 1930, by Helen C. Claypool as county treasurer of Crook county, Oregon, and the Massachusetts Bonding and Insurance Company as surety. The case was tried to the court without a jury and, from a judgment in favor of the state, the surety has appealed.

The undertaking was executed on December 29, 1928. It recited that the defendant Claypool had been duly elected as county treasurer for the term of four

years from January 7, 1929, and contained a condition that if she should faithfully perform and discharge all the duties of her said office for and during said term, then this obligation shall be null and void, otherwise to remain in full force and effect. It also contained the further condition in accordance with the provisions of section 27-603, Oregon Code 1930, that the surety shall not be liable for the payment of any losses sustained by the failure of any depository in which public moneys are now or may be deposited by said principal. It also provided that the surety could cancel the undertaking upon the giving of thirty days' notice and complying with certain specified particulars. The court found that the Prineville National Bank of Prineville, Oregon, became insolvent on September 1, 1931, and that there was then on deposit, subject to check, the sum of $16,-923.25 of moneys that had come into the hands of the treasurer by virtue of her office. It also found that the treasurer had in her custody and possession certain securities which had been deposited with her by said bank as security for the payment of the moneys so deposited with it. The face value of said securities was $14,036.49, but the market value of the same was not proven or found by the court. At the time of the trial, certain sums of money had been received upon said securities by the county treasurer, so that the amount owing by the bank upon said account at the time the judgment was entered had been reduced to the sum of $11,238.64. The court also found that, in addition to said sum, there was certain interest charges that had accrued upon said account, after the failure of the bank, and included said sums in the amount of the judgment.

■■ Section 27-603, Oregon Code 1930, provides that the county treasurer shall not be liable personally

upon his official bond for any moneys that may be lost by reason of the failure or insolvency of any bank which becomes a depository under the act and, since the statute authorized the inclusion of that provision in the undertaking, the state cannot recover for these moneys if the bank at the time of the deposit was a depository within the meaning of the statute. However, the learned trial court found that the bank had never qualified itself so as to become a depository bank within the meaning of this statute, and that the bank had expressly denied that it was a depository. This finding is binding upon this court if there was any substantial evidence to support it. We think that the evidence offered clearly supports the finding and that the bank had expressly refused to become a depository in order that it should not be liable for interest charges which would have been payable if it was a depository.

Under section 27-602, Oregon Code 1930, it is made the duty of the county treasurer to deposit and keep on deposit in the county depositories provided for in the preceding section all the moneys of the county and all other funds coming into his hands. Section 27-601 makes it the duty of a county treasurer, on the first Monday in June of each year to designate such banks and trust companies within his county as have, under the provisions of the act, become eligible county depositories to receive on deposit the funds of the county and all other funds in custody of the treasurer, and then provides the manner in which such banks and trust companies shall qualify. They are required, on or before the first Monday in June of each year, to file an application in writing with the county treasurer, accompanied with a sworn statement of the financial condition of the bank or trust company at the time the application is made. And it is made the duty of the

county treasurer at said time to pass upon the application, to place his stamp thereon with the word ''approved'' or ''rejected'', and to sign the same, after which it is his duty to transmit the application to the district attorney together with all securities offered for the protection of such funds. Upon receipt of the application by the district attorney, it is his duty to pass upon the same and advise the county treasurer as to the legality of the same.

The statute further provides that, before the application can be approved, it must be accompanied either by a depository bond, secured by a duly qualified surety company, guaranteeing the amount of deposits applied for in said application, or by other securities that may be approved by the county treasurer, and no securities shall be approved unless their market value shall equal the amount of the deposit applied for by the bank.

None of these steps were ever taken, and, so far as the evidence in this case shows, the Prineville National Bank was not a depository within the meaning of the act. It is true, as above stated, that certain securities had been at some time deposited by the bank with the county treasurer and she had some of them in her possession at the time the bank failed which she later applied in partial satisfaction of the amount owing by the bank at the time of its suspension. These securities, however, were never sufficient either in amount or market value to secure the entire indebtedness owing by the bank, and it is clear from the evidence that they were placed in the hands of the county treasurer without any intention upon the part of the bank to become a depository of public moneys within the meaning of the act. Nor do we understand from

anything contained in the record that the surety company ever contended that the Prineville National Bank was a depository within the meaning of the statute. Its principal contention is that because it had no knowledge that the bank and the treasurer were not complying with the statute and that other county officers had such knowledge the state is and of right should be estopped to assert that the bank is not a depository so as to relieve it from liability for these funds. The estoppel claimed is an estoppel in pais, sometimes called an estoppel by conduct, or an equitable estoppel, which, of course, is as fully available in law as in equity. Bigelow on Estoppel (6 Ed.) p. 604. Such an estoppel is based on a fraudulent purpose and a fraudulent result. If the element of fraud is wanting, there is no estoppel. There must be deception and change of conduct in consequence, in order to estop a party from showing the truth. 2 Story's Equity Jurisprudence, sec. 1543; *People v. Brown*, 67 Ill. 435. The doctrine is based on the principle that when a person by their words or conduct voluntarily causes another to believe in the existence of a certain state of things and induces him to act upon that belief, so as to change his previous position, he will be estopped to aver against the latter a different state of things. To constitute such an estoppel, the following elements must be present: (1) there must have been a false representation concerning material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention it should be acted upon; (5) it must have been acted upon. *Bly v. Travellers' Ins. Co.*, 142 Or. 523 (20 P. (2d) 1089), and authorities there cited.

It is clear that this estoppel can have no application to the state and there are no facts presented which will estop the state from the enforcement of this undertaking. Persons dealing with officers of the state are bound to know the extent of their authority. When a surety company enters into an undertaking with the state that some officer will faithfully perform his duties in safeguarding the moneys intrusted to him, it renders itself responsible for whatever loss may result from the misapplication of the money by such officer unless the evidence shows some lawful excuse to discharge the surety from such responsibility. The wrongful or unlawful acts of the treasurer in not obeying the plain mandates of the statute, whether other officers of the county knew that the same was being done, or not, affords no excuse to this defendant when sued by the state to recover the loss. In such a case, it is no answer for the surety to say that, because it was ignorant of the wrongdoing but other officers of the county had knowledge of it, it is not responsible for the loss resulting from the failure of the officer to comply with the law. The ignorance of the surety of the wrongdoing is no defense to an action upon the bond when sued by the state. 2 Herman on Estoppel and Res Judicata, p. 810, and authorities cited. See also *United States v. Kirkpatrick,* 9 Wheat. 735 (6 L. Ed. 199) ; *State v. Brewer,* 64 Ala. 287, and cases collected in note in 66 A. L. R., commencing on page 1059.

■ Defendant contends that the allowance to the state of attorney's fees was improper. Section 46-134, Oregon Code 1930, authorizes the allowance of attorney's fees upon all policies of insurance if settlement is not made within six months after date that proof of loss is filed with the company. It further provides that, if the defendant tenders any amount into court and

no greater amount is recovered in the action, then attorney's fees shall not be allowed. There was no tender made and there is no provision in the policy requiring proof of loss as in ordinary fire insurance cases. The commencement of the action is equivalent to demand for payment, whether previously made or not and this we think renders the statute applicable and entitles the plaintiff to attorney's fees in this action. The complaint was filed on April 11, 1932, but the judgment was not entered until June 7, 1933, more than six months after the commencement of this action. This, we think, brought the case within the intendment of the statute under the doctrine followed and approved in *Murray v. Firemen's Ins. Co.,* 121 Or. 165 (254 P. 817); *Goodspeed v. Duby,* 131 Or. 275 (283 P. 6); *School Dist. v. New Amsterdam Cas. Co.,* 132 Or. 673 (288 P. 196); *Dolan v. Continental Cas. Co.,* 133 Or. 252 (289 P. 1057).

Defendant contends, however, that because this action was prosecuted by the district attorney of Crook county, who receives a fixed salary for his services and was acting in his official capacity, no attorney's fees should have been allowed. The fact that his services were paid by a salary fixed by statute is no reason why the county, which is represented by the state in this action, should not be indemnified for the reasonable value of the services of the district attorney while engaged in the enforcement of this action. *Swift v. Board of Com'rs of Hennepin County,* 76 Minn. 194 (78 N. W. 1107). We are of the opinion that, in a proper case, the county is as much entitled to the allowance of reasonable attorney's fees where the services are performed by the district attorney as it would be if the services had been performed by an attorney who had been specially employed to perform them. We think,

however, that the fees allowed by the trial court of $800 were, under the particular circumstances of this case, somewhat excessive and more than the defendant should be required to pay for the prosecution of the action in the court below, and that the sum allowed was sufficient to compensate the county for the services performed in both that court and this. For that reason no additional amount should be allowed upon this appeal.

The judgment, therefore, is affirmed.