Argued and submitted January 7, decision of Court of Appeals and judgment of circuit court reversed; case remanded to circuit court July 9, 1999, petitioners' petition for attorney fees allowed by opinion February 24, 2000
See 330 Or 1 (2000)

Troy DOCKINS
and Donna Dockins,
*Petitioners on Review,*

*v.*

STATE FARM INSURANCE COMPANY,
a corporation,
*Respondent on Review.*

(CC 9605-03556; CA A98608; SC S45747)

985 P2d 796

William A. Drew, Portland, argued the cause and filed the petition for petitioners on review. With him on the petition were Robert E. L. Bonaparte, and Bonaparte, Elliott, Ostrander & Preston, P.C., Portland.

Michael A. Lehner, of Lehner, Mitchell, Rodrigues & Sears, Portland, argued the cause and filed the brief for respondent on review.

Dean Heiling, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.**

GILLETTE, J.

** Riggs, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

As this insurance coverage dispute comes to this court, the sole issue concerns plaintiffs' right to collect attorney fees from defendant insurer. Before trial, the parties settled the substance of the action in plaintiffs' favor for $15,000. The parties left open the question of attorney fees to be resolved by the trial court if and when plaintiffs petitioned the court for such fees. After the parties had entered into a stipulated judgment reflecting their agreement, plaintiffs petitioned for attorney fees. Defendant objected. The trial court concluded that plaintiffs were not entitled to fees. The Court of Appeals affirmed. *Dockins v. State Farm Ins. Co.*, 155 Or App 377, 963 P2d 119 (1998). Plaintiffs petitioned for review. We allowed the petition and now conclude that plaintiffs are entitled to attorney fees. Accordingly, we reverse the decision of the Court of Appeals and the judgment of the trial court, and remand the case to the trial court for further proceedings.

In January 1996, plaintiffs discovered oil seeping into their home through the basement floor. They immediately contacted their homeowner's insurance carrier, defendant State Farm Insurance Company. After examining the property, a State Farm adjuster informed plaintiffs that, although their policy included coverage for accidental, direct damage to their home, it did not cover contaminated soil or damage to their home arising from contamination or natural water seeping through the foundation. The notice explained that State Farm had decided to deny coverage with the understanding that the groundwater on the property had not been affected and concluded: "We ask that you notify us immediately if you discover the groundwater is involved with the clean-up operation." The notice did not explain how or why such a discovery would be relevant.

On February 27, 1996, the Oregon Department of Environmental Quality (DEQ) sent a letter to plaintiffs informing them that DEQ had received notice of a petroleum release from a tank on their property and that, as the parties responsible for the property, they were required to clean up

the release. The letter made no specific reference to ground-water contamination, and nothing in the record indicates that plaintiffs contacted State Farm about the letter.

On May 9, 1996, plaintiffs filed the present action against State Farm for breach of contract and declaratory relief. The contract claim alleged that DEQ had brought an administrative action against plaintiffs, based on petroleum residue on their property, that DEQ claimed that the petroleum had damaged the public groundwater, that plaintiffs would incur reasonable and necessary costs of not less than $6,000 to clean up the property, that the homeowner's policy issued by State Farm provided both general liability and property coverage for the losses alleged, and that, "although demand was made upon [State Farm], no defense to the DEQ's claim was provided, and no part of the sums owing have been paid." Plaintiffs also sought attorney fees under ORS 742.061, set out *post*, their costs of remedial action "in an amount to be proved at trial," and a declaration that State Farm was liable for those costs.

State Farm requested an extension of time to file its answer. In a letter to plaintiffs' lawyer, State Farm indicated that the complaint was its "first notice of there being a third party claim in this matter, as well as any ground water contamination."[1] On July 30, 1996, plaintiffs provided State Farm with a copy of DEQ's cleanup letter, together with copies of a number of cleanup bids. On August 16, 1996, State Farm filed an answer denying most of plaintiffs' allegations and raising seven affirmative defenses. Those defenses included that the policy excluded liability coverage to property owned by the insured, that plaintiffs had failed to comply with policy conditions, that plaintiffs had failed to state a claim for damage to covered property, and that the policy excluded property damage coverage for damage caused by contamination, corrosion, and the like.

Plaintiffs moved for summary judgment on the issue of State Farm's duty to defend the DEQ action against plaintiffs. In response, State Farm argued, among other things,

---

[1] In State Farm's view, plaintiffs' policy applied *only* to a claim for remediation of groundwater contamination.

that plaintiffs had failed to submit any evidence that they had tendered defense of the DEQ action to State Farm or that State Farm had denied coverage. In reply, plaintiffs submitted the affidavit of plaintiff Donna Dockins, which stated that she had advised State Farm by telephone in March or April of 1996 that there appeared to be groundwater contamination at the site. Plaintiffs also argued that the complaint itself constituted a tender of defense of the DEQ action. The trial court denied plaintiffs' motion for summary judgment, ruling that, "at a minimum, there is a question of fact as to whether plaintiffs have satisfied the conditions precedent to their claim." The next day, on November 14, 1996, plaintiffs formally tendered defense of the DEQ action to State Farm, enclosing DEQ's February 27, 1996, letter. Several months later, in February 1997, plaintiffs reiterated their formal tender of defense, this time including a letter from DEQ that clarified that plaintiffs' cleanup responsibilities extended to groundwater.

Shortly thereafter, the parties settled the action on the policy for $15,000 and reserved the question of attorney fees. A stipulated order and judgment to that effect followed. More than six months had elapsed between the date that plaintiffs filed their complaint and the date of the settlement.

Plaintiffs then petitioned for $18,725 in attorney fees under ORS 742.061, which provides:

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the cost of the action and any appeal thereon."

State Farm opposed the petition, arguing that ORS 742.061 requires that an insurer be given six months to evaluate any claim before an action is commenced. State Farm contended that it was denied any opportunity to evaluate the claim in this case before plaintiffs filed their complaint, because plaintiffs never filed a proof of loss with respect to the DEQ action or otherwise gave sufficient notice of that

claim (which State Farm styled as one for third-party liability coverage) until long after plaintiffs had filed their action. The trial court denied the petition for attorney fees for "failure to comply with ORS 742.061."

Plaintiffs appealed, arguing that they *had* complied with ORS 742.061—in particular, that they had submitted the equivalent of a proof of loss (thereby triggering the six-month settlement deadline in the statute) either by filing their action against State Farm on May 9, 1996, or by providing State Farm with cleanup bids on July 30, 1996. Plaintiffs also suggested that State Farm's argument that plaintiffs had failed properly to tender defense of DEQ's third-party claim was a "red herring," because their complaint contained *both* a first-party claim and a third-party claim. The Court of Appeals affirmed the trial court on the ground that the stipulated judgment for plaintiffs in the amount of $15,000 did not exceed defendant's $15,000 tender. The court held that "ORS 742.061 applies when a plaintiff obtains a money judgment in excess of an unaccepted tender * * *. Defendant offered $15,000, plaintiff[s] accepted the tender, and judgment was entered for that amount." *Dockins*, 155 Or App at 379.

In petitioning this court for review of the Court of Appeals' decision, plaintiffs focus their attention on the issue decided by the Court of Appeals and give less attention to the proof-of-loss issue on which the trial court relied. We are persuaded, however, that the proof-of-loss issue requires analysis, and we turn to it now.

State Farm notes that ORS 742.061 requires that there be no settlement within six months after filing a proof of loss. State Farm maintains that, when the third-party liability provisions of a policy are at issue, the six-month settlement period is triggered only when the insured formally tenders defense of the third-party action to the insurer, *i.e.*, tender of defense of the third-party claim to the insurer *is* the "proof of loss." State Farm further contends that, because plaintiffs' action sought third-party coverage for DEQ's cleanup action against plaintiffs, it falls within that rule. State Farm contends that plaintiffs did not tender the defense of the DEQ action, *i.e.*, file their proof of loss, until

November 14, 1996, long after they had filed their action against State Farm, and that State Farm had accepted the defense of the DEQ claim and settled plaintiffs' policy claims within six months of that tender of defense. Given those facts, State Farm concludes that plaintiffs did not fulfill the first requirement for collecting attorney fees under ORS 742.061—failure to reach settlement within six months of a proof of loss.

Plaintiffs respond that, even if they failed formally to file a proof of loss by tendering defense of the DEQ cleanup action before they filed their complaint against State Farm, the complaint itself was sufficient to trigger the six-month settlement deadline on their third-party claim. Plaintiffs further contend that, in any event, defendant's "tender of defense" argument is beside the point, because the complaint contained *both* first- and third-party claims, and plaintiffs prevailed, by virtue of the stipulated judgment, *on both*. At the very least, plaintiffs argue, the complaint would serve as a proof of loss for their *first*-party claim, thereby triggering the six-month settlement period.

■ Having stated the contentions of the parties, we begin with the following question: Did plaintiffs submit a "proof of loss," within the meaning of ORS 742.061, more than six months before the parties settled? The answer to that question depends on what the legislature intended to convey in ORS 742.061 by its use of the term "proof of loss." To discern that intent, we employ the analytical framework summarized in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), which begins, and in this case ends, with an examination of text and context.

The term "proof of loss," as it is used in ORS 742.061, is not self-defining. However, case law from this court establishes that the term encompasses more than the ordinary, policy-based meaning.[2] The statute, by its terms, applies to "any policy of insurance of any kind or nature," whether or not the policy includes a specific proof-of-loss requirement. It follows, then, that the term "proof of loss" in ORS 742.061

---

[2] Case law construing a statute is considered at our first level of analysis under the *PGE* framework. *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998).

means something more than whatever is required by the policy at issue. *See Groce v. Fidelity General Insurance*, 252 Or 296, 311, 448 P2d 554 (1969) (court noted that, although the statute "no doubt was drawn in contemplation of the type of claim ordinarily made by means of a 'proof of loss' form," it was broad enough to permit recovery in other circumstances).

■      At least one case from this court, *State v. Claypool*, 145 Or 615, 28 P2d 882 (1934), establishes that an insured can trigger the statutory six-month period for settlement by an act such as filing a complaint. *Claypool*, which was decided under a substantively identical predecessor of ORS 742.061, involved an action by the state on a county official's bond. The state filed the action to recover on the bond when the official failed to safeguard funds that had been entrusted to her. More than a year after the complaint was filed, the trial court entered judgment for the state. The state then sought attorney fees under Oregon Code 1930, § 46-134 (the predecessor statute). This court held that an award could be made:

> "There was no tender made and there is no provision in the policy requiring proof of loss as in ordinary fire insurance cases. The commencement of the action is equivalent to demand for payment, whether previously made or not and this we think renders the [attorney fees] statute applicable and entitles the plaintiff to attorney's fees in this action. The complaint was filed on April 11, 1932, but the judgment was not entered until June 7, 1933, more than six months after the commencement of this action. This, we think, brought the case within the intendment of the statute under the doctrine followed and approved in [various cases awarding attorney fees under the statute]."

*Claypool*, 140 Or at 622. *Claypool* establishes that the statutory meaning of the term "proof of loss" encompasses a range of events or submissions, including a complaint that commences an action against the insurer.

■      What else, then, marks an event or submission as a "proof of loss" within the meaning of ORS 742.061? This court's cases that have considered the adequacy of a claimant's attempt to comply with a policy provision requiring proof of loss are instructive. Although those cases speak in

terms of substantial compliance with the policy specifications, they ultimately conclude that an event or submission is adequate, both for purposes of collecting on the policy itself and for obtaining attorney fees under ORS 742.061, if it accomplishes the *purpose* of a proof of loss. That purpose is " 'to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay.' " *Sutton v. Fire Insurance Exch.*, 265 Or 322, 325, 509 P2d 418 (1973) (quoting 14 Couch, Cyclopedia of Insurance Law § 49:373, p 15 (2d ed)). *See also Heis v. Allstate Insurance Co.*, 248 Or 636, 644, 436 P2 550 (1968) ("the insurer is entitled to enough information to form a reasonable estimate of its liability").

◼ Thus, the court's cases establish that that functional meaning of the term "proof of loss" described above fits ORS 742.061 and that the legislature intended for that standard to apply, despite different or more formal proof-of-loss requirements in the insurance policy itself.

Indeed, our cases suggest that, at least where ORS 742.061 is concerned, a plaintiff's burden, if anything, may be even lighter. In *Heis*, in particular, this court placed insurers under a duty of inquiry, holding that, even if a submission is insufficient to allow the insurer to estimate its obligations, it will be deemed sufficient if the insurer could accomplish that purpose through a reasonable investigation. 248 Or at 644-45.[3]

---

[3] In *Heis*, this court stated:

"[T]he adequacy of plaintiff's proof of loss can be explained in even broader terms. There are no provisions in the statutes or in the insurance contract relating to the specificity with which the insured must set forth his proof of loss. The insurer is entitled to sufficient information to form a reasonable estimate of its liability. This does not mean that the insured's claim is barred if the proof of loss originally filed does not contain sufficient information to make this estimate. If the proof of loss is ambiguous, the insurer should make a reasonable effort to resolve the ambiguity. Defendant's own policy indicates that it may be necessary for it to investigate a claim for purpose of testing its validity."

248 Or at 644. Later in the opinion, the court shifted the burden of clarifying a proof of loss even more decisively onto the insurer:

"If defendant's contention is that plaintiff's proof of loss was so uncertain that defendant was unable to determine the character of plaintiff's claim, then defendant should have requested plaintiff to make her claim more definite and certain."

*Id.* at 645.

From the foregoing discussion of the text of ORS 742.061 and the case law that surrounds it and its predecessor statutes, we conclude the meaning of the statutory term "proof of loss" is clear: Any event or submission that would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims) qualifies as a "proof of loss" for purposes of the statute.

■ That leaves us with a question about timing. State Farm argues that, whatever "proof of loss" means in the statute, such proof must be filed at least six months *before* any legal action is filed. Certainly, the statute could be read that way. However, this is not the first time that we have addressed the issue of the scope of the statute. This court rejected the essential equivalent of State Farm's argument in *Murray v. Firemen's Ins. Co.*, 121 Or 165, 254 P 817 (1927). *Murray* held, under a substantively similar predecessor to ORS 742.061, that a proof of loss filed only two months before the commencement of an action was sufficient to trigger the period for settlement. The court explained that the statute "was not intended to postpone litigation or defer recovery by an insured but was intended to protect an insured who has suffered a loss from annoying and expensive litigation." *Id.* at 172. In other words, the statute seeks to protect *insureds* from the necessity of litigating their valid claims. It has no converse purpose of protecting *insurers* from litigation.

■ With the foregoing points in mind, we turn to the case at hand to determine whether any event that occurred more than six months before the settlement would qualify as a "proof of loss" under ORS 742.061. We begin with the complaint, which alleges that State Farm issued a policy to plaintiffs that provides both general liability and property coverage. The complaint then alleges:

"During the policy term, the Oregon Department of Environmental Quality made a claim against plaintiffs that damage had occurred as a result of petroleum residue on plaintiffs' property. The claim of damage was a claim including injury to the public's groundwater as a result of the condition of plaintiffs' property. As a result, plaintiffs have incurred and will incur reasonable and necessary costs and expenses to remove and monitor the petroleum

residue on plaintiffs' property in an amount not less than $6,000, including tank removal and cleanup, restorative landscaping, and regulatory fees."

Finally, the complaint prays for "remedial action costs in excess of $6,000 in an amount to be proved at trial, including plaintiffs' attorney fees herein."

In our view, those allegations in plaintiffs' complaint were sufficient to qualify as a proof of loss under ORS 742.061, at least with regard to the claim for third-party liability coverage that State Farm has identified as the "essence" of plaintiffs' action. State Farm acknowledges that its duty to defend under those provisions would be triggered if there were a claim against plaintiffs based on groundwater contamination. The complaint alleges such a claim. Although it is true that the DEQ demand was not attached to the complaint and that State Farm was not required to accept plaintiffs' characterization of the DEQ demand at face value, it also is true that State Farm easily could have ascertained whether plaintiffs' characterization was accurate.

As to its duty to indemnify under the liability provision of the policy, State Farm argues that the six-month settlement period does not begin to run until plaintiffs could calculate their remediation costs with enough specificity to enable State Farm to make a settlement offer. Again, in so arguing, State Farm ignores its duty of inquiry. There is no basis in this record to hold that, if it had undertaken an inquiry, State Farm could not have made that calculation.

We conclude that, at least with respect to the third-party liability claim that was at the center of plaintiffs' action and that drove the settlement of the action, plaintiffs' complaint was a "proof of loss" within the meaning of ORS 742.061. We further conclude that, because the parties failed to settle within six months of the filing of that complaint, the first element of ORS 742.061 is satisfied.

■ The foregoing brings us to the ground on which the Court of Appeals relied to conclude that ORS 742.061 was inapplicable to the present controversy—that the stipulated judgment in plaintiffs' favor did not exceed defendant's settlement offer of $15,000. In so holding, the Court of Appeals

deemed defendant's settlement offer, which was made some 10 months after the complaint was filed and more than six months after defendant had filed an answer to that complaint denying any liability under the insurance policy, to be a "tender" within the meaning of ORS 742.061:

> "In this case, plaintiffs did not obtain a judgment in excess of defendant's tender. Defendant offered $15,000, plaintiffs accepted the tender, and judgment was entered for that amount. ORS 742.061 does not apply."

*Dockins*, 155 Or App at 379.

Plaintiffs argue that defendant's settlement offer was not a "tender" within the meaning of ORS 742.061. Plaintiffs contend that, in holding otherwise, the Court of Appeals ignored this court's longstanding construction of that term as referring only to unconditional offers to pay made before the commencement of an action. In so arguing, plaintiffs rely primarily on their reading of *Dolan v. Continental Casualty Co.*, 133 Or 252, 289 P 1057 (1930).

*Dolan* was decided under the substantively identical predecessor to ORS 742.061, Oregon Laws, section 6355 (1920), as amended by General Laws of Oregon 1927, chapter 184.[4] In *Dolan*, the insured brought an action to collect on a life insurance policy and obtained a judgment for the full sum of the policy plus attorney fees. On appeal, the court granted the defendant insurer a new trial on the basis of an error at trial. However, when the action came on for retrial, the defendant answered by confessing its liability and tendering into court the full amount claimed on the policy. Over the plaintiff's objections, the trial court entered judgment on the

---

[4] Oregon Laws, section 6355 (1920), as amended by General Laws of Oregon 1927, chapter 184, provided:

> "Whenever any suit or action is brought in any court of this state upon any policy of insurance of any kind or nature whatsoever, the plaintiff, in addition to the amount which he may recover, shall also be allowed and shall recover as part of said judgment such sum as the court or jury may adjudge to be reasonable as attorney's fees in said suit or action; provided, that settlement is not made within six months from date proof of loss is filed with the company; provided further, that if a tender be made by a defendant in any such suit or action and the plaintiff's recovery shall not exceed the amount thereof, then no sum shall be recoverable as attorney's fees."

pleadings and declined to award attorney fees on the apparent theory that the defendant had defeated the plaintiff's claim for attorney fees by tendering into court the amount claimed on the policy.

On the plaintiff's appeal of that decision, this court held that the plaintiff was entitled to her attorney fees. The court reasoned that, if the court were to allow the defendant's offer of settlement to preclude a recovery of attorney fees, "notwithstanding the expensive and prolonged litigation, then the benefit of the statute [would be] largely destroyed." *Id.* at 256. The court indicated, moreover, that the defendant and the trial court on remand had misapprehended the meaning of the statutory term "tender." The court noted:

> "The meaning of the word 'tender,' when said statute was enacted, was defined by our statute, Or. L., § 574. The general laws of the state having defined the word 'tender,' it will be presumed, on the enactment of a new statute using the word 'tender,' that the word as defined by the statute is intended. * * * [Section 6355] does not attempt to define 'tender' and that word as therein used must be taken to be the word 'tender' used in said section 574."

*Id.* at 254-55. Section 574, which is substantially equivalent to present day ORS 20.180, provided that a prevailing plaintiff's bid for attorney fees would be defeated if the defendant had made a prelitigation tender in excess of the amount ultimately recovered and then had deposited that same amount into the court.

Plaintiffs contend that, because ORS 742.061 is substantially the same statute as the one at issue in *Dolan*, the interpretation set out in that case is binding here. Thus, plaintiffs conclude, State Farm's offer of settlement was not a "tender" within the meaning of ORS 742.061, because it came after the litigation had commenced. That argument, however, reads too much into *Dolan*. The point of that case was not that only a prelitigation tender would suffice. The point was that the tender had to be timely (and, in that context, the tender was not timely).

Although they do not read *Dolan* accurately, plaintiffs nonetheless prevail because, although there have been modest revisions to the statute since *Dolan*, none of those

revisions has affected its theoretical approach. Unless and until the legislature decides to provide otherwise, only a timely tender (which State Farm's was not) can defeat a prevailing insured's right to attorney fees. In the context of the present case, in which the filing of the insured's complaint is deemed to be the "proof of loss," that means that State Farm had six months from the date of service of the complaint in which to make a tender, *i.e.*, an unconditional offer to pay money. As noted, it did not meet that deadline.[5]

In the companion case to this one, *Grijalva v. Safeco Ins. Co.*, 153 Or App 144, 956 P2d 995 (1998), *rev'd and rem'd* 329 Or 36, 985 P2d 784 (1999), the Court of Appeals, apparently also misreading *Dolan* to require prelitigation tenders, concluded that *Dolan* implicitly was overruled by *Gore v. Prudential Ins. Co. of Amer.*, 265 Or 12, 507 P2d 20 (1973). The Court of Appeals stated:

> "We conclude that in light of later case law, *Dolan* is no longer controlling. In *Gore*, for example, * * * the plaintiff commenced litigation on an insurance policy and the insurer, facing multiple claims on the policy, interpleaded the proceeds of the policy. *Gore*, 265 Or at 14. The insurer made no tender before the commencement of litigation. Nevertheless, the court concluded that the plaintiff was not entitled to recover attorney fees under [the identically-worded predecessor to ORS 742.061] because the statute was intended to provide attorney fees in situations where 'the insurer is contending it has no liability under the policy' and did not provide for attorney fees where the insurer was 'willing to pay policy proceeds to whomever they might belong.' *Gore*, 265 Or at 16. In the light of *Gore*, we must conclude that, notwithstanding *Dolan*, ORS 742.061 does not require that tenders be made before the commencement of litigation."

*Grijalva*, 153 Or App at 155.

Whatever vitality that analysis might continue to have in light of our reading of *Dolan*, we disagree with the Court of Appeals' assessment of the import of *Gore*. *Gore* involved competing claims to the proceeds of a life insurance

---

[5] Because State Farm's offer was not timely, we need not address the question whether it was unconditional, and we express no opinion on that question.

policy. The insurer did not know whom to pay. When the claimants filed independent actions on the policy, the insurer responded that it was willing to deliver the entire proceeds of the policy to whomever the court might direct. The insurer asked the court to consolidate the two actions and to require the claimants to litigate the issue of who was entitled to the proceeds.

In considering whether the victorious claimant was entitled to attorney fees under ORS 743.144 (the predecessor to ORS 742.061), this court first noted that, under the circumstances, the course of action that the insurer chose to follow—allowing the claimants to sue and then seeking to proceed in interpleader—was not substantially different from preempting the claimants and filing its own interpleader action. The court then stated:

> "It is our belief that the legislature did not intend, by the passage of the statute, to place the insurance company in a position where it either had to pay one claimant or the other, running the risk of double recovery, or was compelled to pay attorney fees. * * *.

> "It appears to us that the circumstances envisaged by the statute are those where the insurer is contending it has no liability under the policy. We believe that the statute was not intended to apply to any situation where an insurance company, as an innocent stakeholder, is willing to pay policy proceeds to whomever they might belong."

*Gore*, 265 Or at 16. *Gore* thus identified a single circumstance to which the statute does not apply—"where an insurance company, as an innocent stakeholder, is willing to pay policy proceeds to whomever they might belong." *Id.* It says nothing about the overall meaning of the statute in more ordinary circumstances, *i.e.*, when the claimant has a quarrel *with the insurer* about his or her right to payment under a policy.

As construed by this court, ORS 742.061 provides that plaintiffs are entitled to attorney fees if their recovery exceeds the amount of any timely tender made by defendant. State Farm did not make a timely tender in this case. Its offer of settlement, made more than six months after service of the complaint, does not defeat plaintiffs' claim for attorney fees under ORS 742.061.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed and the case is remanded to the circuit court for further proceedings.