Argued and submitted January 31, reversed and remanded July 20, petition for review denied December 29, 2011 (351 Or 507)

Joann HALL,
*Plaintiff-Appellant,*

*v.*

Taysia SPEER;
Aimbridge Hospitality, LP;
and Ray Welsh,
*Defendants,*

*and*

ALLSTATE INSURANCE COMPANY,
*Defendant-Respondent.*

Multnomah County Circuit Court
080506976; A145014

261 P3d 1259

Michael J. Clancy argued the cause and filed the briefs for appellant.

Joel S. DeVore argued the cause for respondent. With him on the brief was Luvaas Cobb.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Plaintiff was injured in an automobile accident caused by an underinsured motorist and ultimately prevailed in an action for underinsured motorist (UIM) benefits against her insurer, defendant Allstate. The only issue before us at this point in this case is whether she provided Allstate with "proof of loss" resulting from the accident more than six months before Allstate accepted coverage and consented to binding arbitration. If she did, then she is entitled to attorney fees. ORS 742.061 (set out below). The trial court ruled that she did not. We reverse and remand.

The relevant facts are undisputed. Plaintiff was injured in an automobile accident on September 16, 2006. She carried Allstate insurance that provided liability, personal injury protection (PIP), and UIM coverage. Two days after the accident, she informed Allstate that the accident had occurred and that she had been injured. On January 28, 2009, more than two years after learning of plaintiff's accident and after a number of events described below, Allstate sent plaintiff a letter acknowledging that it had "accepted coverage" of her UIM claim, that the remaining issues were "liability and damages," and that, if Allstate and plaintiff could not reach a settlement, Allstate was "also willing to submit to binding arbitration." Plaintiff declined arbitration and ultimately won a jury verdict that exceeded Allstate's settlement offer. She then petitioned for attorney fees pursuant to ORS 742.061.

The date of Allstate's letter acknowledging coverage and offering arbitration is important because ORS 742.061 provides, in part:

"(1)   Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind of nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *

"* * * * *

"(3)   Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration."

In this case, no settlement occurred, and plaintiff's recovery exceeded Allstate's tender. Thus, Allstate could avail itself of the "safe harbor" afforded by ORS 742.061(3) and avoid paying reasonable attorney fees only if its January 28, 2009, letter accepting coverage and offering to arbitrate occurred within six months of plaintiff's proof of loss—that is, only if plaintiff's proof of loss occurred after July 28, 2008.

Before that date, the following relevant events occurred:

- September 18, 2006:   Plaintiff informed Allstate that she had been injured in an accident.

- September 27, 2006:   Plaintiff filled in and submitted to Allstate an application for PIP benefits that Allstate had sent her, in which she described the accident as well as her injuries. Except for its caption, the application for PIP benefits is in all relevant respects identical to the application for UIM benefits.

- Fall 2006:   Allstate's PIP adjuster opened a file on plaintiff's case and noted that the allegedly at-fault driver carried liability insurance. The PIP adjuster did not inform the UIM adjuster of plaintiff's claim.

- February 5, 2007:   At Allstate's request, plaintiff was examined by an orthopedic surgeon, who reported that the September 2006 accident had caused significant injuries.

- May 24, 2007:   Plaintiff's counsel wrote letters informing Allstate's PIP adjuster and its general liability adjuster that he represented plaintiff.

Plaintiff argued to the trial court that the application for PIP benefits, together with the surgeon's report and counsel's letters to Allstate's adjusters, constituted proof of loss. Allstate took the position that, in a UIM case, the insurer does not have proof of loss until it knows the underinsured motorist's liability limit and the nature of the policyholder's injuries, knowledge that, in this case, plaintiff did not provide until just two months before Allstate's January 2009 acknowledgement of coverage and offer to arbitrate. The court agreed with Allstate:

> "Until the insurer received a communication that the liability insurance carried by the driver at fault was less than the claimed damages suffered by the plaintiff, the insurer had not received information sufficient to estimate its own liability under the underinsured motorist coverage. The initial report of medical injuries did not reveal damages likely to exceed mandated liability coverage. Because the insurer of the driver at fault was not obligated to reveal its limits to Allstate, Allstate was not able to make [an] estimation of its obligations by reasonable investigation. Until the insurer did receive that information, it had not received a 'proof of loss' covered by the underinsurance motorist provisions of the policy. As soon as it did, it acted appropriately."

Plaintiff appeals.

The term "proof of loss" as used in ORS 742.061 is not defined by statute. However, a Supreme Court interpretation of a statute becomes part of the statute's text, *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992), and the court has defined "proof of loss" for purposes of ORS 742.061 as follows: "Any event or submission that would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims) * * *." *Dockins v. State Farm Ins. Co.*, 329 Or 20, 29, 985 P2d 796 (1999); *accord Scott v. State Farm Mutual Auto. Ins.*, 345 Or 146, 155, 190 P3d 372 (2008). The term is functional as opposed to formal; whether a submission to an insurer constitutes proof of loss depends on whether it promotes the statute's purpose, which is to allow the insurer an adequate opportunity for investigation. *Dockins*, 329 Or at 28. If the proof of loss is unclear, an insurer has a duty of

inquiry. "[E]ven if a submission is insufficient to allow the insurer to estimate its obligations, it will be deemed sufficient if the insurer could accomplish that purpose through a reasonable investigation." *Id.* (citing *Heis v. Allstate Insurance Co.*, 248 Or 636, 644-45, 436 P2d 550 (1968)).

Applying these standards, the Supreme Court in *Scott* held that the insured submitted adequate proof of loss in an uninsured motorist case by informing the insurer that the insured was receiving medical treatment for injuries and submitting an insurer-provided application for benefits that provided the same kind of information that plaintiff here submitted on her application for PIP benefits: a description of the accident and the resulting injury.

> "By January 11, State Farm was aware that plaintiff was receiving medical treatment for injuries sustained in a car accident with an uninsured motorist. By January 20, plaintiff had completed and submitted an 'application for benefits,' which stated that '[t]he information provided will enable us to determine if you are entitled to benefits under the policyholder's insurance contract,' and included an authorization for plaintiff's health care providers to provide information to State Farm. The application included a description of the accident and the resulting injury to plaintiff, as well as contact information for the doctor who treated her."

345 Or at 156. Allstate insists, however, that *Scott* is distinguishable in one crucial respect: it deals with a claim for *un*insured motorist (UM) benefits, whereas the present case involves *under*insured benefits. In the former situation, according to Allstate, a claim accrues at the time the insured is injured in an accident; from that moment, all of the elements of a claim are in existence. In a UIM case, on the other hand, there is no claim until several post-accident events occur, the most significant of which is the exhaustion of the at-fault driver's liability insurance. Put another way, Allstate argues that an insurer *cannot* have enough information to estimate its obligations in a UIM case until it knows that the at-fault driver's liability insurance is inadequate to cover the insured's compensable expenses. And further, Allstate maintains, because the insured has better access to this

information, "it is appropriate to speak of this first prerequisite to claim accrual as something plaintiff must show."

We disagree. Allstate understates its own obligation to investigate and clarify claims. *Dockins* announces in unambiguous terms that insurers have a "duty of inquiry, * * * even if a submission is insufficient to allow the insurer to estimate its obligations." 329 Or at 28. In *Heis*, 248 Or at 645, the court stated, "If [the insurer's] contention is that [the] plaintiff's proof of loss was so uncertain that defendant was unable to determine the character of plaintiff's claim, then defendant should have requested plaintiff to make her claim more definite and certain." In *Parks v. Farmers Ins. Co.*, 347 Or 374, 376-79, 227 P3d 1127 (2009), the plaintiffs incurred damages to a rental property that they owned and that was covered in an insurance policy issued by Farmers, the defendant. In two telephone conversations with the Farmers adjuster, the plaintiffs described damages caused by a tenant's methamphetamine lab. Farmers believed that such damage was excluded by a "pollution" exclusion. More than six months after the telephone conversations, the plaintiffs brought an action against Farmers for damage caused by the methamphetamine lab and also by vandalism. Farmers then made an offer of settlement, which the plaintiffs accepted. The plaintiffs then sought attorney fees under ORS 742.061 on the theory that the telephone conversations with the Farmers adjuster constituted proof of loss. Farmers responded that, because those calls mentioned only methamphetamine damage, they did not provide information that would allow it to estimate its liability for vandalism damages. The court ruled in favor of the plaintiffs, explaining that the calls "conveyed sufficient information to allow Farmers to ascertain its obligations *vis-à-vis* a *possible* claim for methamphetamine damage, *taking into account Farmers' duty to investigate and clarify uncertain claims.*" *Id.* at 388 (second emphasis added).[1]

---

[1] Allstate argues that, in *Mosley v. Allstate Ins. Co.*, 165 Or App 304, 310-11, 996 P2d 513 (2000) and again in *Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 89 P3d 1277, *rev den*, 337 Or 327 (2004), this court held that the kind of information that Allstate had in this case was not adequate proof of loss in an underinsured motorist case. *Mosley* was expressly abrogated in *Scott*, 345 Or at 154-56. *Weatherspoon* relied on *Mosley* and, in any event, is distinguishable on its facts: the insurer in *Weatherspoon* had no information regarding the extent of the insured's injuries.

Based on these cases, we conclude that the information that Allstate had by May 24, 2007—20 months before it acknowledged coverage and offered to arbitrate—triggered Allstate's duty to make a reasonable effort to investigate and clarify its *possible* UIM obligations, and that Allstate made no such efforts. That information included notice that plaintiff had been in an accident; that plaintiff had incurred serious injuries as a result; that the at-fault driver was insured; and that plaintiff carried UIM insurance.

We reach this conclusion with full awareness of Allstate's insistence that its duty to investigate was vitiated for two reasons: first, because Allstate's internal procedures separated PIP claims from UIM claims, and, as a result, the UIM branch of its claim processing department did not learn about the UIM claim until shortly before the January 28 letter accepting coverage and offering to arbitrate; and second, because any attempt to investigate and clarify plaintiff's UIM claim would not have provided Allstate with the information that it needed in order to determine its obligation—in particular, the at-fault driver's liability limits.

There are several flaws in Allstate's first argument, but we need to mention only one: the Supreme Court in *Scott*, 345 Or at 156, rejected the "separate department" argument. "We are not aware of any reason * * * to permit an insurer's unilaterally imposed corporate practice to compromise an injured party's right to timely acceptance of a claim under ORS 742.061."

Allstate's second argument—that investigating the claim to determine if there was UIM exposure was unnecessary because it would have been futile—is also unpersuasive. Allstate bases that argument entirely on the affidavits of two people. The at-fault driver's claim adjuster at Farmers stated that, due to (unspecified) "confidentiality and privacy concerns," she "did not disclose" and "would not have disclosed" that driver's policy limit to Allstate even if she had been asked. Allstate's UM/UIM adjuster stated, "[D]ue to [unspecified] conflict issues, insurance carriers do not reveal the policy limits of its [*sic*] insured to other carriers during the claim process and there would have been no way for Allstate to determine what policy limits were available" to plaintiff.

These statements are insufficient for two reasons. First, they deal with only the insurance carriers' policies regarding disclosure of their insureds' policy limits without addressing other sources of that knowledge, for example the policyholder himself, either directly or through plaintiff's counsel, with whom the at-fault driver was negotiating. A reasonable good faith investigation by Allstate would not have been limited to inquiries addressed to Farmers. Second, the statements do not confront Allstate's core problem: there is no evidence that it ever attempted to conduct any investigation at all, much less a reasonable one. Had there been such evidence, we would have a different case with, possibly, a different outcome. But we are unwilling to allow an insurer access to the safe harbor of ORS 742.061 when that insurer has ignored its duty to investigate merely because, after the fact, it can produce two people whose self-serving attestations indicate that performing its duty would have been to no avail.[2]

Reversed and remanded.

---

[2] In an argument raised for the first time in her reply brief, plaintiff argues that the letter from Allstate contained only a conditional offer to arbitrate and therefore Allstate has still not achieved safe harbor status. We do not reach that argument because it was unpreserved below and because, in any event, it would not affect the outcome of this case.