Submitted on remand from the Oregon Supreme Court  March 13, affirmed
December 24, 2014

Joann HALL,
*Plaintiff-Appellant,*

*v.*

Taysia SPEER;
Aimbridge Hospitality, LP;
and Ray Welsh,
*Defendants,*

*and*

ALLSTATE INSURANCE COMPANY,
*Defendant-Respondent.*

Multnomah County Circuit Court
080506976; A145014

343 P3d 640

Michael J. Clancy filed the briefs for appellant.

Joel S. Devore and Luvaas Cobb filed the brief for respondent.

Before Nakamoto, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HASELTON, C. J.

## HASELTON, C. J.

This case is on remand from the Oregon Supreme Court, which vacated our prior decision, *Hall v. Speer*, 244 Or App 392, 261 P3d 1259 (2011) (*Hall I*), and remanded for reconsideration in light of its decision in *Zimmerman v. Allstate Property and Casualty Ins.*, 354 Or 271, 311 P3d 497 (2013). *Hall v. Speer*, 354 Or 699, 319 P3d 696 (2014) (*Hall II*). On remand, the dispositive issue is whether plaintiff—who prevailed in an action against her insurer, defendant Allstate Insurance Company (Allstate), for underinsured motorist (UIM) benefits—provided Allstate with a "proof of loss" more than six months before Allstate accepted coverage and consented to binding arbitration such that she is entitled to attorney fees under ORS 742.061. Although, in *Hall I*, we concluded that the trial court had erred in determining that plaintiff had not provided a timely proof of loss, the Supreme Court in *Zimmerman* clarified the principles governing that inquiry in the context of a UIM claim. For the reasons explained below, we now conclude that, under *Zimmerman*, the information that plaintiff provided to Allstate was insufficient to trigger an obligation to investigate a UIM claim. Thus, plaintiff failed to provide Allstate with timely proof of loss, and she was not entitled to attorney fees under ORS 742.061. Accordingly, we affirm.

With three amplifications noted below, we take the facts and a description of the procedural history of this case from *Hall I*.

"The relevant facts are undisputed. Plaintiff was injured in an automobile accident on September 16, 2006. She carried Allstate insurance that provided liability, personal injury protection (PIP), and UIM coverage. Two days after the accident, she informed Allstate that the accident had occurred and that she had been injured. On January 28, 2009, more than two years after learning of plaintiff's accident and after a number of events described below, Allstate sent plaintiff a letter acknowledging that it had 'accepted coverage' of her UIM claim, that the remaining issues were 'liability and damages,' and that, if Allstate and plaintiff could not reach a settlement, Allstate was 'also willing to submit to binding arbitration.' Plaintiff declined arbitration and ultimately won a jury verdict that exceeded Allstate's

settlement offer. She then petitioned for attorney fees pursuant to ORS 742.061.

"The date of Allstate's letter acknowledging coverage and offering arbitration is important because ORS 742.061 provides, in part:

"'(1)   Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *

"'* * * * *

"'(3)   Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"'(a)   The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"'(b)   The insurer has consented to submit the case to binding arbitration.'

"In this case, no settlement occurred, and plaintiff's recovery exceeded Allstate's tender. Thus, Allstate could avail itself of the 'safe harbor' afforded by ORS 742.061(3) and avoid paying reasonable attorney fees only if its January 28, 2009, letter accepting coverage and offering to arbitrate occurred within six months of plaintiff's proof of loss—that is, only if plaintiff's proof of loss occurred after July 28, 2008.

"Before that date, the following relevant events occurred:

"•   September 18, 2006: Plaintiff informed Allstate that she had been injured in an accident.

"•   September 27, 2006: Plaintiff filled in and submitted to Allstate an application for PIP benefits that

Allstate had sent her, in which she described the accident·as well as her injuries. Except for its caption, the application for PIP benefits is in all relevant respects identical to the application for UIM benefits.

"•  Fall 2006: Allstate's PIP adjuster opened a file on plaintiff's case and noted that the allegedly at-fault driver carried liability insurance. The PIP adjuster did not inform the UIM adjuster of plaintiff's claim.

"•  February 5, 2007: At Allstate's request, plaintiff was examined by an orthopedic surgeon, who reported that the September 2006 accident had caused significant injuries. [That report indicated that an MRI of plaintiff's left shoulder showed 'a very small partial thickness tear of the supraspinatus tendon along its articular surface.' The surgeon noted that '[t]he typical necessary treatment *** is physical therapy *** directed toward her left shoulder joint' and that he 'believe[d] that she should be seen in therapy twice weekly for the next six to eight weeks.' The surgeon also indicated that plaintiff 'may require one or two other corticosteroid injections.']

"•  May 24, 2007: Plaintiff's counsel wrote letters informing Allstate's PIP adjuster and its general liability adjuster that he represented plaintiff.[1]

---

[1] In May 2006—four months before the September accident that is the subject of this case—plaintiff had been in another automobile accident. Plaintiff's attorney sent one of the May 2007 letters to Allstate's PIP adjuster. That letter referenced both accidents and stated, in pertinent part:

"We have been retained to represent [plaintiff] concerning the above-referenced auto accidents. Please direct all future communication concerning these incidents to me.

"Please also provide me with an updated ledger of all of the medical expenses that Allstate has paid concerning these incidents.

"Please call or write with any questions."

Plaintiff's attorney sent the second letter to the general liability adjuster. That letter also referenced both accidents and stated:

"We have been retained to represent [plaintiff] concerning auto accidents that occurred on 5/15/06 and 9/16/06. Please direct all future communication concerning these incidents to me.

"Please also provide me with the following:

"1. Any statements taken of [plaintiff], and

"2. Copies of all medical records concerning [plaintiff].

"3. Photographs of damage to the vehicles involved in the accident.

"Please call or write with any questions."

"Plaintiff argued to the trial court that the application for PIP benefits, together with the surgeon's report and counsel's letters to Allstate's adjusters, constituted proof of loss. Allstate took the position that, in a UIM case, the insurer does not have proof of loss until it knows the underinsured motorist's liability limit and the nature of the policyholder's injuries, knowledge that, in this case, plaintiff did not provide until just two months before Allstate's January 2009 acknowledgement of coverage and offer to arbitrate.[2] The court agreed with Allstate:

> "'Until the insurer received a communication that the liability insurance carried by the driver at fault was less than the claimed damages suffered by the plaintiff, the insurer had not received information sufficient to estimate its own liability under the underinsured motorist coverage. The initial report of medical injuries did not reveal damages likely to exceed mandated liability coverage. Because the insurer of the driver at fault was not obligated to reveal its limits to Allstate, Allstate was not able to make [an] estimation of its obligations by reasonable investigation. Until the insurer did receive that information, it had not received a 'proof of loss' covered by the underinsurance motorist provisions of the policy. As soon as it did, it acted appropriately.'"

*Hall I,* 244 Or App at 394-96 (sixth brackets and omissions in *Hall I*). Plaintiff appealed.

Relying on the Supreme Court's decisions in *Parks v. Farmers Ins. Co.,* 347 Or 374, 227 P3d 1127 (2009), *Scott v. State Farm Mutual Auto. Ins.,* 345 Or 146, 190 P3d 372 (2008), and *Dockins v. State Farm Ins. Co.,* 329 Or 20, 985 P2d 796 (1999), we held that

"the information that Allstate had by May 24, 2007—20 months before it acknowledged coverage and offered to arbitrate—triggered Allstate's duty to make a reasonable effort to investigate and clarify its *possible* UIM obligations, and that Allstate made no such efforts. That information included notice that plaintiff had been in an accident; that plaintiff had incurred serious injuries as a result; that the

---

[2] Our understanding is that, in November 2008, plaintiff sought Allstate's consent to settle with the driver for his policy limit of $25,000, and Allstate granted its consent without "waiving [its] PIP lien of $2,956.92."

at-fault driver was insured; and that plaintiff carried UIM insurance."

*Hall I*, 244 Or App at 399 (emphasis in original). In doing so, we rejected Allstate's contention that "an insurer *cannot* have enough information to estimate its obligations in a UIM case until it knows that the at-fault driver's liability insurance is inadequate to cover the insured's compensable expenses." *Id.* at 397 (emphasis in original). We also rejected Allstate's argument that, in light of insurance carriers' policies not to disclose their insureds' policy limits, any duty to investigate was vitiated because "any attempt to investigate and clarify plaintiff's UIM claim would not have provided Allstate with the information that it needed in order to determine its obligation—in particular, the at-fault driver's liability limits." *Id.* at 399. Allstate sought review.

Thereafter, the Supreme Court decided *Zimmerman*, in which the court clarified the principles for determining what constitutes a "proof of loss" in the context of a claim for UIM benefits. For that reason, we describe *Zimmerman* in detail.

There, the plaintiff, Zimmerman, was injured in an automobile accident in December 2006. Zimmerman gave a recorded statement to Allstate, explaining that her car had been totaled, she had been injured, and the other driver (Alvis) had admitted liability and been cited by the police.[3] Thereafter, Zimmerman submitted a PIP application and a medical authorization form to Allstate, and, "[i]n the following months, Allstate corresponded with Zimmerman or her attorney concerning medical records on a number of occasions." *Zimmerman*, 354 Or at 274. In December 2007, Zimmerman's treating physician informed Allstate that Zimmerman continued to suffer from neck and back pain and that x-rays showed a "reversed cervical spine"; however, no further bills for medical expenses were submitted to Allstate.

In July 2008, Zimmerman's attorney sent a demand letter to Alvis's insurance company. In September 2008,

---

[3] Although "[t]he record [did] not disclose whether Zimmerman reported any information about whether Alvis was insured at that time, *** the parties assume[d] that Alvis was insured." *Zimmerman*, 354 Or at 274.

an adjuster from Alvis's company "telephoned an Allstate employee to advise that Zimmerman would likely pursue a UIM claim against Allstate." *Id.* Thereafter, Allstate and Zimmerman's attorney exchanged forms and correspondence concerning a UIM claim. Eventually, Alvis's company tendered its policy limits to Zimmerman, and Allstate contested Zimmerman's claim for an additional $75,000 in UIM benefits.

Following a jury trial, the trial court entered a judgment against Allstate for breach of its policy, and Zimmerman sought attorney fees under ORS 742.061. The trial court awarded Zimmerman attorney fees.

On appeal, we affirmed. Specifically, we held:

> "It is undisputed by Allstate that, in this case, [Zimmerman] provided Allstate with the facts of the accident and her injuries by December 2007, information sufficient to trigger a duty to investigate, more than six months before Allstate accepted coverage and consented to submit the claim to binding arbitration on September 26, 2008."

*Zimmerman v. Allstate Property and Casualty Ins.*, 246 Or App 680, 681, 267 P3d 203 (2011), *rev'd*, 354 Or 271, 311 P3d 497 (2013).

On review, the Supreme Court explained that "proof of loss" is a term of art in the insurance industry and that "what is sufficient to constitute a proof of loss under a policy depends on the type of insurance at issue." *Zimmerman*, 354 Or at 280. According to the Supreme Court, its

> "cases arising under ORS 742.061 and its predecessors have taken a pragmatic and functional, as opposed to strict and formalistic, approach in defining the term 'proof of loss.' It refers to any 'event or submission' that accomplishes the purpose of a proof of loss, that is, 'to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay.' *Dockins*[, 329 Or at 28-29]. This court has emphasized that insurers 'operate under a duty of inquiry.' *Parks*[, 347 Or at 381]. If a submission, by itself, is ambiguous or insufficient to allow the insurer to estimate its obligations, it nevertheless will be deemed sufficient if it provides enough information to allow the insurer 'to investigate and clarify uncertain claims.' *Dockins*, 329 Or at 29."

*Zimmerman*, 354 Or at 281-82. Noting that its prior decisions in *Parks*, *Scott*, and *Dockins* did not address the sufficiency of a submission to constitute a proof of loss in the UIM context, the court turned to an examination of the nature of that type of insurance.

The court explained that Oregon's UIM statute has adopted what is referred to as a "comparison of limits" or "limits-to-limits" approach. *Zimmerman*, 354 Or at 287-88. Under that approach, a driver is "underinsured if the driver's liability limits are less than the injured person's liability limits." *Id.* at 287. The court stated that it was worth emphasizing that (1) in the UIM context, "the threshold determinant is the tortfeasor's policy limits[,]" in the absence of which "it cannot be determined whether that driver is underinsured"; and (2) "the comparison of the tortfeasor's and the insured's liability limits produces only an insurer's *potential* UIM liability" because "[t]he insurer's *actual* UIM liability depends on the amount of the injured insured driver's damages and any payments that have been received from the tortfeasor." *Id.* at 288 (emphasis in original).

With that understanding, the court in *Zimmerman* turned to the particular circumstances of that case. In that regard, Zimmerman contended that "the information that she provided [in her December 2006 accident report], *coupled with information that her doctor provided over a year later*, was sufficient to trigger an investigation that conceivably could have revealed at least a potential UIM claim[.]" *Id.* (emphasis in original). The court rejected that contention. Although the Supreme Court indicated that "it is not necessary that [a proof of loss] enable the insurer to determine precisely its obligations" and that "it is likewise not always necessary for the information to include the tortfeasor's precise limits," the court noted that, as of December 2007, there was no evidence that Allstate was aware of or could have acquired Alvis's policy limits or that Zimmerman's damages exceeded Alvis's policy limits. *Id.* at 291. In sum, the court reasoned that, as of December 2007, no "information that Zimmerman supplied Allstate[] *suggest*[*ed*] that she would be bringing a claim for damages in excess of [Alvis's] liability limits." *Id.* at 290 (emphasis added). Instead, the court held:

"Not until the September 2008 call from [Alvis's insurer] did Allstate learn of the *possibility* of a UIM claim. Assuming for the sake of argument that that call, combined with the information that Zimmerman had earlier provided, constituted information 'sufficient to enable [Allstate] to estimate its obligations' or at least 'to do so after a reasonable investigation,' *Scott*, 345 Or at 156, that leads to the conclusion that the proof of loss was filed in September 2008, well within six months of Allstate's filing of its safe harbor letter."

*Id.* at 291 (second brackets in *Zimmerman*; emphasis added). Accordingly, the Supreme Court reversed our decision in *Zimmerman* and remanded the case to the trial court.

As noted, after the Supreme Court issued its decision in *Zimmerman*, it vacated our decision in *Hall I* and remanded the case for reconsideration. In light of *Zimmerman*, we now conclude, as explained below, that the circumstances on which plaintiff relies to constitute her proof of loss were insufficient to trigger an investigation by Allstate because those circumstances did not even suggest to Allstate the possibility of a UIM claim.

Here, plaintiff contends that her application for PIP benefits and medical release, coupled with the surgeon's report and her attorney's May 2007 letters to the Allstate adjusters, constituted proof of loss. As explained above, 267 Or App at 643 n 1, those letters indicate only that the attorney represented plaintiff, asked that future correspondence be directed to him, and sought plaintiff's statements, copies of her medical records, accident photographs, and an updated ledger of medical expenses that Allstate had paid. Those circumstances—which did not even suggest to Allstate the possibility of a UIM claim—are materially indistinguishable from those in *Zimmerman* and, for that reason, were insufficient to trigger Allstate's obligation to investigate such a claim. Accordingly, we conclude that the trial court did not err in concluding that plaintiff did not file a proof of loss more than six months before Allstate accepted coverage and consented to binding arbitration and, hence, did not err in denying plaintiff attorney fees.

Affirmed.