Argued and submitted June 8, 2006, affirmed June 13, 2007

Laura SCOTT,
*Appellant,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
a foreign corporation,
*Respondent.*

0312-13683; A127691

161 P3d 944

Helen C. Tompkins argued the cause for appellant. With her on the briefs was Law Office of Helen Tompkins.

R. Daniel Lindahl argued the cause for respondent. With him on the brief were John R. Bachofner and Bullivant Houser Bailey, PC.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

* Landau, J., *vice* Ceniceros, S. J.

ORTEGA, J.

**ORTEGA, J.**

Plaintiff appeals the trial court's judgment denying her attorney fees in connection with her uninsured motorist claim. Plaintiff's eligibility for fees hinged on whether she submitted an adequate proof of loss more than six months before defendant State Farm Mutual Automobile Insurance Company consented in writing to coverage and arbitration. We affirm the judgment for State Farm.

Except where noted, the following facts are undisputed. Plaintiff was involved in a car accident on January 8, 2002. She was insured by State Farm, and the other driver was uninsured. On January 11, Sally Hess, a claim representative who worked on uninsured/underinsured motorist (UM/UIM) claims for State Farm, contacted plaintiff, informed her of the various types of coverage available to her, and took her recorded statement. According to Hess, plaintiff said that she was not sure whether she would pursue UM bodily injury coverage. Plaintiff does not directly contradict that assertion, but emphasizes that she never said that she was *not* bringing a UM claim. Plaintiff told Hess that she was receiving medical treatment, and Hess referred plaintiff to the personal injury protection (PIP) department for coverage of her ongoing treatment.

The adjuster for plaintiff's PIP claim provided her with a form entitled "application for benefits." Plaintiff completed and submitted that form around January 20. State Farm used that form exclusively for PIP claims, although it did not have a separate proof of loss form for UM/UIM claims. According to plaintiff, State Farm never furnished her with any other forms, and she understood that the application for benefits form was an application for all benefits, including PIP and UM benefits. The completed application included a description of the accident and the resulting injury to plaintiff, as well as contact information for the doctor who treated her. Near the top of the form was printed, in all capital letters, "The information provided will enable us to determine if you are entitled to benefits under the policyholder's insurance contract." (Uppercase omitted.) The form also included an authorization for plaintiff's health care providers to provide information to State Farm.

State Farm separated processing of PIP and UM/UIM claims and did not allow UM/UIM claim representatives to see PIP file materials without authorization. Accordingly, in keeping with State Farm's usual practice, plaintiff's application for benefits form was not sent to the UM department.

On January 25 and 30, Hess left telephone messages asking plaintiff to call about a possible bodily injury claim. On February 27, Hess and plaintiff spoke by telephone and, according to Hess, plaintiff "indicated for the first time that she might pursue a UM/UIM claim. As a result, I advised that I would send her a [m]edical [a]uthorization for her to sign and return for State Farm to obtain records and information." That same day, Hess wrote to the other driver and informed him that plaintiff was making a claim for UM benefits and asked him to inform State Farm if he in fact did have insurance. Both parties apparently agree that plaintiff returned the medical authorization form on March 6, although that form is not in the record.[1]

Nearly six months later, in a letter dated August 28, 2002, plaintiff's counsel wrote to Hess, asserting that State Farm had received notice of plaintiff's claim more than six months before and that plaintiff "has not received any written notice from State Farm containing the written language approved in ORS 742.061."[2] The letter warned that if the claim did not settle, plaintiff would have the right to recover

---

[1] Plaintiff complains in her reply brief on appeal regarding the form's absence from the record, but does not contend that the form was returned earlier than March 6. In any event, early in the litigation plaintiff admitted in response to a request for admissions from State Farm that she signed the medical authorization form "on March 6, shortly after [State Farm] sent it to plaintiff."

[2] ORS 742.061 provides, in part:

"(1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *

"* * * * *

"(3) Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

attorney fees. State Farm responded with a letter dated August 30 accepting coverage and consenting to binding arbitration.

Plaintiff later sued State Farm, alleging that State Farm had not paid UM benefits owed to her and that she was entitled to recover her reasonable attorney fees pursuant to ORS 742.061. All other aspects of the case eventually settled, leaving attorney fees as the only remaining issue. State Farm moved for partial summary judgment "dismissing plaintiff's claim for attorney fees." Plaintiff filed a cross-motion for partial summary judgment "as to the recoverability of attorney fees under ORS 742.061." After a hearing, the trial court granted defendant's motion and denied plaintiff's. Although, as we discuss below, plaintiff refers to "the facts as found by the trial court" and defendant states that the trial court "held that [p]laintiff did not file a proof of loss * * * earlier than March 6, 2002," the trial court made no findings and did not state its conclusions of law beyond indicating which party's motion was granted.[3] This appeal followed.

Plaintiff now contends that, because defendant had only one form for applying for benefits, she "did all she needed to do by January 20, 2002 [the day she completed the application for benefits] to advise State Farm of sufficient facts for it to investigate her UM claim." She argues that, by February 27, when Hess wrote to the other driver informing him that plaintiff was making a UM claim, State Farm was aware of all of the particulars relevant to her claim. Accordingly, in plaintiff's view, because State Farm did not accept coverage and consent to binding arbitration in writing as required under ORS 742.061(3) until August 30, 2002—more than six months later—defendant did not qualify for the "safe harbor" of ORS 742.061(3).

---

"(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b) The insurer has consented to submit the case to binding arbitration."

The legislature amended ORS 742.061 in 2003. Or Laws 2003, ch 794, § 328. The amendment does not affect our analysis in this case.

[3] Each party sought summary judgment on the issue of attorney fees, and neither contends on appeal that the trial court erred by resolving the dispute pursuant to ORCP 47 rather than ORCP 68. Accordingly, we do not consider that issue.

State Farm responds that the earliest point at which plaintiff can be said to have filed a proof of loss in support of her UM claim is when she returned the medical authorization form to Hess on March 6. There is no dispute that State Farm sent its letter accepting coverage and consenting to arbitration within six months of that date.

ORS 742.061(1) provides for an award of attorney fees to a plaintiff if, among other conditions, "settlement is not made within six months from the date proof of loss is filed with an insurer." Likewise, ORS 742.061(3) provides a safe harbor for a UM/UIM insurer only if it provides written acceptance of coverage and consent to binding arbitration "not later than six months from the date proof of loss is filed with the insurer." Accordingly, plaintiff's right to attorney fees hinges on when she filed a "proof of loss" to support her UM claim within the meaning of ORS 742.061(1) and (3). For the reasons explained below, we agree with State Farm that none of plaintiff's contacts with State Farm before March 6 constituted a proof of loss to trigger her right to attorney fees under ORS 742.061. Accordingly, State Farm's August 30 communication with plaintiff necessarily brought it within the safe harbor of ORS 742.061(3).

We held in *Mosley v. Allstate Ins. Co.*, 165 Or App 304, 311, 996 P2d 513 (2000), that "proof of loss" in ORS 742.061 is synonymous with "proof of claim" in ORS 742.504(5)(a)[4] and, consistent with that statute, must be a written submission including " 'full particulars' of the nature and extent of the insured's injuries, treatment and other material details." Thus, a letter from the insured's attorney, which stated that the insured's injuries were stationary, sought a fixed amount in benefits, and enclosed all relevant medical records, constituted a proof of loss for purposes of ORS 742.061. 165 Or App at 312-13. Plaintiff here contends that the application for benefits that she submitted to the PIP adjuster on January 20 fit that description and that, even though she had not by then notified State Farm that she

---

[4] The legislature amended ORS 742.504 in 2003 and 2005. Or Laws 2003, ch 175, § 2; Or Laws 2005, ch 22, § 490; Or Laws 2005, ch 236, § 1; Or Laws 2005, ch 246, § 2; Or Laws 2005, ch 247, § 2. Those amendments do not affect our analysis in this case.

sought UM coverage, the application for benefits, by its terms, applied generally to "benefits under the policyholder's insurance contract," which necessarily included UM benefits. It follows, she contends, that by February 27, when State Farm notified the other driver that plaintiff was making a claim for UM benefits, the application for benefits functioned as a proof of loss supporting her UM claim, of which State Farm was by then aware.

However, we rejected a similar argument in *Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 89 P3d 1277, *rev den*, 337 Or 327 (2004). There, the plaintiff contended that she had made a proof of loss for her UIM claim through a transcribed statement concerning her application for PIP benefits and a PIP application that included releases for obtaining medical and wage-loss information. 193 Or App at 340. We began by noting that UIM coverage (as is true for UM coverage) provides for a much broader scope of benefits than does PIP coverage. *Id.* at 338-39. We then rejected the plaintiff's argument, explaining that the documents that she relied on

> "did not permit defendant to estimate its obligations under plaintiff's policy regarding a future UIM claim because *nothing in the documents indicated to defendant that plaintiff was seeking UIM benefits under the policy.* As we indicated in *Mosley*, proof of loss for a UM or UIM claim must include the full particulars of the nature and extent of the insured's injuries, treatment, and other material details so as to permit an insurer to estimate its obligations under the UIM coverage in its policy. The information furnished by plaintiff over six months before defendant consented to coverage and arbitration failed to inform defendant that plaintiff was making a UIM claim. Plaintiff's submissions to defendant notified defendant only that plaintiff had been in an accident and that plaintiff was seeking PIP benefits. Therefore, under *Dockins* [*v. State Farm Ins. Co.*, 329 Or 20, 985 P2d 796 (1999),[5]] and *Mosley*, plaintiff did not file a

---

[5] In *Dockins*, the Supreme Court—addressing an earlier version of ORS 742.061 that did not contain the safe harbor provision relating to UM/UIM coverage now contained in ORS 742.061(3) but did contain the language now appearing in ORS 742.061(1)—stated that "[a]ny event or submission that would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims) qualifies as a 'proof of loss' for purposes of the statute." 329 Or at 29. However, *Dockins* involved homeowner's insurance

proof of loss on plaintiff's UIM claim more than six months before defendant consented to coverage and arbitration."

*Id.* at 340 (emphasis added). Likewise here, plaintiff's written submissions to State Farm before March 6 notified it only that she had been in an accident and was seeking PIP benefits. Although State Farm apparently at least recognized the potential for a UM claim, it had nothing in writing from plaintiff indicating her intention to pursue such a claim.

Plaintiff seeks to avoid that result by asserting that we are bound by a finding by the trial court that State Farm in fact knew of her intention to pursue a UM claim by February 27. She cites a statement that the trial judge made during defense counsel's argument on the cross-motions for summary judgment. However, that statement was not a finding—and indeed, the trial judge immediately backed off the statement during further discussion with defense counsel:

"THE COURT: Well, I think by February 27th she'd said she was making the UM claim—

"[DEFENSE COUNSEL]: Well—

"THE COURT: —according to * * * Hess's affidavit.

"[DEFENSE COUNSEL]: She said she might be making a UM[—]I think is what the affidavit says at that point, because at that point we still did not have affirmative evidence.

"THE COURT: Oh, might, might pursue."

Further discussion ensued about whether plaintiff needed to submit anything more in writing beyond the application for benefits, but ultimately the court ruled in favor of defendant without making any factual findings.

In all events, although an issue of fact may exist about whether State Farm knew that plaintiff affirmatively intended to pursue a UM claim by February 27, plaintiff has not presented any evidence that she had submitted anything *in writing* that informed State Farm of that intention by that date. The undisputed evidence establishes that, at the time

coverage, for which there was no applicable statutory clarification of the term "proof of loss" as there is for UM/UIM coverage.

she submitted the application for benefits on January 20, she had not informed State Farm of an intention to pursue a UM claim, and any more definite statements that she made later did not transform that written application into a proof of loss to support a previously undisclosed UM claim without further written evidence of her intention to pursue such a claim. Moreover, we need not decide whether plaintiff's return of the medical authorization on March 6 in response to Hess's processing of her potential UM claim constituted written notice of plaintiff's intention sufficient to satisfy the requirement of a proof of loss of her UM claim under ORS 742.061, because that communication occurred within six months of State Farm's written notice that it accepted coverage and consented to arbitration.

Affirmed.