Argued and submitted October 11, 2006, reversed July 11, 2007

## Eric PARKS
## and Yolanda Parks,
### *Plaintiffs-Respondents,*

### *v.*

## FARMERS INSURANCE COMPANY OF OREGON,
### *Defendant-Appellant.*

## Multnomah County Circuit Court
## 030606214; A127316

162 P3d 1088

Beth Cupani argued the cause for appellant. With her on the briefs were Lisa E. Lear and Bullivant Houser Bailey PC.

Robert E.L. Bonaparte argued the cause for respondents. With him on the brief was Shenker & Bonaparte, LLP.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Haselton, Judge.*

BREWER, C. J.

---

* Haselton, J., *vice* Richardson, S. J.

**BREWER, C. J.**

Defendant insurer appeals from a supplemental judgment[1] for attorney fees in favor of plaintiffs, its insureds, in this action for homeowner's insurance benefits. ORS 742.061. Defendant argues that the trial court erred in awarding attorney fees to plaintiffs because defendant settled plaintiffs' claim within six months after plaintiffs filed a qualifying proof of loss by serving the complaint in this action. We reverse.

Plaintiffs Eric and Yolanda Parks owned a rental residence for which defendant issued a homeowner's insurance policy. The rental residence is located in Oregon, and plaintiffs resided in California. The policy excluded from coverage property damages from "release, discharge or dispersal of contaminants, pollutants, insecticides or hazardous gasses, or chemicals[.]" In April 2003, plaintiffs learned that the police had seized a methamphetamine lab at their rental residence. Yolanda telephoned defendant's sales agent, Pascone, and told her that the police had seized the lab. Yolanda also gave Pascone the approximate date of the seizure and the name of a decontamination contractor that plaintiffs had hired to perform cleanup on the property.

The parties submitted conflicting evidence as to whether Yolanda asked Pascone for coverage for the cost of the decontamination. Yolanda testified that she asked Pascone for help and that Pascone told her there was no coverage for the decontamination cleanup, but that "other things might be covered, but she would need to check it out." Pascone testified that Yolanda never asked to make a claim on the policy and told Pascone that she did not believe there was insurance coverage for the decontamination costs.

On May 19, Eric telephoned Pascone to ask her to reconsider coverage for the methamphetamine cleanup. Eric testified that he asked Pascone to "reconsider the denial of the claim" and that she told him that the decontamination costs were not covered. Eric gave Pascone the name of one of

---

[1] Presiding Judge Koch signed the supplemental judgment on behalf of another judge.

the tenants and the tenant's employer's name, explained that the cost of decontaminating the property was $6,710, and that he expected to pay another $2,000 to $3,000 "to complete that job." Eric stated that he also told Pascone that there had been vandalism to the property, consisting of two broken windows that would cost less to repair than the policy's deductible. When asked whether he asked Pascone to "consider coverage for the vandalism," Eric testified that he "was worried about the methamphetamine at the time." Eric testified that, when he talked to Pascone, the house was quarantined. Pascone testified that Eric said that he did not believe that the decontamination costs were covered under the policy, that the other damage consisted of two broken windows, "and since it would be under the deductible, he would not turn a claim in."

Pascone made written notes of Eric's telephone call that referred to the estimated costs for cleanup of the methamphetamine damage. However, plaintiffs did not provide Pascone with any written information regarding any damages to the property. Plaintiffs received a "certificate of fitness" in the mail, stating that the house was habitable on May 30, but plaintiffs had no further contact with defendant before they filed this action on June 11, 2003.

In their complaint, plaintiffs sought unspecified "accidental physical" property damages under the policy in the amount of $70,000. After commencing the action, plaintiffs arranged for an inspection of the vandalism damage to the property. In October, a contractor estimated that the total repair cost for the vandalism damage was $10,338. On October 16, 2003, plaintiffs made a written settlement demand that included, among other items, the vandalism repair expenses ($10,338); lost rents ($2,800); diminution in value to the property ($10,000); methamphetamine cleanup costs ($6,800); and other items, including attorney fees. The total settlement demand was for $45,000. On November 19, defendant's counsel sent a letter to plaintiffs' counsel that reiterated defendant's position that the methamphetamine cleanup costs were excluded from coverage under the policy. On December 10, 2003, defendant made an offer to allow

judgment, pursuant to ORCP 54 E,[2] against defendant on all of plaintiffs' claims, exclusive of attorney fees and costs, in the sum of $22,021.31. Plaintiffs accepted the offer.

Thereafter, plaintiffs filed a petition for attorney fees pursuant to ORS 742.061, which provides, in part:

> "[I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

In the petition, plaintiffs asserted that their telephone calls to Pascone in April and May constituted a valid proof of loss, that defendant had failed to settle their claim within six months of submission of the proof of loss and, therefore, plaintiffs were entitled to attorney fees. Defendant objected, contending that plaintiffs' telephone calls did not constitute a valid proof of loss and that defendant had tendered its offer of judgment within six months of "plaintiffs filing anything that could reasonably be construed to be a sufficient 'proof of loss' under ORS 742.061." After an evidentiary hearing, the trial court concluded that the telephone calls—especially the May 19 call—constituted a valid proof of loss, and the court entered a supplemental judgment awarding plaintiffs their attorney fees.

■ ■ On appeal, defendant renews its argument that plaintiffs were not entitled to recover attorney fees under ORS 742.061, because defendant settled plaintiffs' claim within six months from the date plaintiffs filed any arguably

---

[2] ORCP 54 E provides:

"Except as provided in ORS 17.065 through 17.085, the party against whom a claim is asserted may, at any time up to 10 days prior to trial, serve upon the party asserting the claim an offer to allow judgment to be given against the party making the offer for the sum, or the property, or to the effect therein specified."

valid proof of loss by serving the complaint in this action.[3] The trial court stated that plaintiffs' two "contacts, particularly the second one in May from the husband saying[,] 'I've spent $7,000, and I'm going to have to spend two or three thousand more to get the place ready to rent[,]' " together constituted a valid proof of loss. To the extent that that determination necessarily resolved disputed questions of fact, we review the court's implicit findings of fact for "any evidence." *Shumake v. Foshee*, 197 Or App 255, 261, 105 P3d 919 (2005) (We review any underlying findings of fact in an attorney fee dispute "as we usually review findings of fact in nonequity civil proceedings—that is, for any evidence."). Otherwise, we review the court's ultimate conclusion as a question of law. *Mosley v. Allstate Ins. Co.*, 165 Or App 304, 307, 996 P2d 513 (2000) ("[w]hether a particular statute entitles a party to recover attorney fees is a question of law"); *Morgan v. Goodsell*, 198 Or App 385, 390, 108 P3d 612 (2005) ("A party's entitlement to attorney fees is a question of law.").[4] In this case, although there are disputed issues of fact in the evidentiary record, our analysis leads to the conclusion that none of those factual disputes is dispositive of the legal issue whether plaintiffs made a qualifying proof of loss more than six months before defendant settled their claim.

Defendant contends that the trial court erred in concluding that the telephone contacts constituted a qualifying proof of loss because, under ORS 742.061, a "proof of loss" must be in writing. Defendant argues that the term "proof of loss *filed*" indicates that the legislature intended to require a written proof of loss. Defendant asserts that, at best for plaintiffs, the service of their complaint—which was filed on June 11— constituted the first filing of a qualifying proof of loss for their covered property damages. *See Dockins v. State*

---

[3] Defendant does not separately object to the amount of the award.

[4] Plaintiffs contend that we should review the award of attorney fees for abuse of discretion under ORS 20.075. Plaintiffs are mistaken. We review for abuse of discretion where "an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." ORS 20.075(1) and (3). ORS 20.075 does not apply to attorney fees awarded under ORS 742.061, because, if the conditions of that statute are satisfied, an award of attorney fees to the insured is mandatory, not discretionary. *Petersen v. Farmers Ins. Co.*, 162 Or App 462, 466, 986 P2d 659 (1999).

*Farm Ins. Co.*, 329 Or 20, 33, 985 P2d 796 (1999) ("In the context of the present case, in which the filing of the insured's complaint is deemed to be the 'proof of loss,' that means that [the insurer] had six months from the date of service of the complaint in which to make a tender, *i.e.*, an unconditional offer to pay money."). Because the complaint was served less than six months before it tendered its offer of judgment, defendant asserts that plaintiffs are not entitled to attorney fees under ORS 742.061.

In *Dockins*, the Supreme Court interpreted the meaning of "proof of loss" as the term is used in ORS 742.061. The court stated:

> "[A]n *event or submission* is adequate, both for purposes of collecting on the policy itself and for obtaining attorney fees under ORS 742.061, if it accomplishes the *purpose* of a proof of loss. That purpose is to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay.
>
> "Thus, the court's cases establish that that functional meaning of the term 'proof of loss' described above fits ORS 742.061 and that the legislature intended for that standard to apply, despite different or more formal proof-of-loss requirements in the insurance policy itself."

*Dockins*, 329 Or at 28 (emphasis added; internal quotation marks and citations omitted). The court concluded that "proof of loss" means "[a]ny *event* or submission that would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims)." *Id.* at 29 (emphasis added). In so concluding, the court relied on its previous decision in *Sutton v. Fire Insurance Exch.*, 265 Or 322, 509 P2d 418 (1973). In that case, the insured's property was burglarized on two different occasions, and the insured reported the burglaries the day after each occurred. *Id.* at 323. The insured also furnished lists of the property stolen. The insurer's adjuster asked the insured to dictate to the adjuster a list of the items taken and their estimated value, and the adjuster then compiled the information into a form. The insured was not asked to and did not sign the form. The issue on appeal was whether the insured had submitted a valid claim where the policy

required the insured to provide the insurer with proof of loss "signed and sworn to" by the insured, stating the particulars of the loss. *Id.* at 324. The court concluded that the insured had substantially complied with the policy, because "the proof submitted by the insured fulfilled the purpose of the proof of loss." *Id.* at 325.[5]

■ Thus, the method of filing a proof of loss—whether by filling out a form or by orally providing information to the insurer's agent who, in turn, can put it in written form—is less important than the substance of the information provided. Simply put, "the proof of loss requirement is intended to trigger the insurer's duty to investigate." *Mosley*, 165 Or App at 312. In this case, defendant's agent transcribed notes of her May 19 conversation with Eric in which he arguably provided sufficient information to trigger an inquiry concerning a possible claim for methamphetamine cleanup expenses. However, that does not end the analysis.

■ Defendant argues that plaintiffs' telephone calls did not constitute a valid proof of loss, because plaintiffs raised in those conversations only the particulars of a loss—the methamphetamine cleanup costs—that was not covered under the policy. In response, plaintiffs do not argue that those costs were covered under the policy; instead, they assert that the "meth claim" contained all the particulars necessary for defendant to ascertain its liabilities. The policy excluded recovery for the "release, discharge or dispersal of * * * hazardous gases or chemicals." Accordingly, the methamphetamine decontamination cleanup costs appear to be excluded on the face of the policy. Because plaintiffs do not contend otherwise, we assume for purposes of this appeal that the exclusion was applicable and that the policy did not provide coverage for those costs.[6]

_____

[5] Although *Sutton* involved the construction of a policy provision, not a statute, the *Dockins* court treated it as instructive with respect to the meaning of the term "proof of loss" in ORS 742.061. *Dockins*, 329 Or at 28.

[6] At the attorney fee hearing, plaintiffs' counsel asserted that the issue whether the policy covered damages related to methamphetamine contamination "has no bearing whatsoever in this case." Instead, plaintiffs argued that their complaint alleged that all of their losses were covered under the policy and that, because defendant did not file a motion to require plaintiffs to specify which damages were actually covered under the policy, defendant's settlement offer encompassed damages from the decontamination cleanup. As a consequence, plaintiffs

In *Dockins*, the court held that a proof of loss is "[a]ny event or submission that would permit an insurer to estimate its obligations *(taking into account the insurer's obligation to investigate and clarify uncertain claims)*[.]" 329 Or at 29 (emphasis added). The court further stated:

> "Indeed, our cases suggest that, at least where ORS 742.061 is concerned, a plaintiff's burden, if anything, may be even lighter. In *Heis* [*v. Allstate Insurance Co.*, 248 Or 636, 436 P2d 550 (1968)], in particular, this court placed insurers under a *duty of inquiry*, holding that, even if a submission is insufficient to allow the insurer to estimate its obligations, it will be deemed sufficient if the insurer could accomplish that purpose through a reasonable investigation. 248 Or at 644-45."

*Dockins*, 329 Or at 28 (emphasis added). The court explained this "duty of inquiry" in *Heis* as follows:

> "There are no provisions in the statutes or in the insurance contract relating to the specificity with which the insured must set forth his proof of loss. The insurer is entitled to sufficient information to form a reasonable estimate of its liability. *This does not mean that the insured's claim is barred if the proof of loss originally filed does not contain sufficient information to make this estimate.* If the proof of loss is ambiguous, the insurer should make a reasonable effort to resolve the ambiguity. * * *
>
> "If defendant's contention is that plaintiff's proof of loss was so uncertain that defendant was unable to determine the character of plaintiff's claim, then defendant should have requested plaintiff to make her claim more definite and certain."

248 Or at 644-45 (emphasis added).

---

argued, defendant cannot complain about the earlier calls having pertained only to uninsured losses. Plaintiffs did not further develop that argument at trial, nor have they done so on appeal. Plaintiffs have not articulated or developed any argument, for example, that defendant somehow waived, or is estopped to object to the absence of, a qualifying proof of loss by reason of the terms of the offer of judgment. Accordingly, we do not further address their largely undeveloped argument, except to observe that defendant consistently rejected plaintiffs' assertion that the methamphetamine cleanup costs were covered under the policy, and there was no evidence that defendant actually intended to compensate plaintiffs for those costs in making its offer of judgment.

On the other hand, in *Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 340, 89 P3d 1277, *rev den*, 337 Or 327 (2004), we concluded that, by making a written application for personal injury protection (PIP) benefits, the plaintiff had not filed a proof of loss for underinsured motorist (UIM) benefits for the purpose of recovering attorney fees under ORS 742.061 in a UIM action. We noted that PIP and UIM coverages are qualitatively distinct from each other and that the requirements for proof of claim for UIM benefits are very particular. *Weatherspoon*, 193 Or App at 338-39. We concluded that the plaintiff's application for PIP benefits "did not permit defendant to estimate its obligations under plaintiff's policy regarding a future UIM claim because nothing in the documents indicated to defendant that plaintiff was seeking UIM benefits under the policy." *Id.* at 340.

This case differs from *Weatherspoon*, where the plaintiff sought recovery under qualitatively separate coverages because, here, all of the damages that plaintiffs sought, both initially in their telephone conversations with Pascone, and later, in this action, involved property damage under their homeowners' insurance policy. However, the undisputed evidence showed that plaintiffs did not ask Pascone to investigate any losses except those related to the excluded decontamination costs. The subject of the April call was the decontamination costs. In the May call, which the trial court regarded as the more important of the two, Eric did tell Pascone that there had been vandalism damage. However, at that time, plaintiffs did not intend to make a claim for that damage because the cost would be less than the policy deductible. Instead, the purpose of the call was to ask Pascone to reconsider coverage for the methamphetamine decontamination. When asked whether he asked Pascone to "consider coverage for the vandalism," Eric testified that he "was worried about the methamphetamine at the time." To punctuate the matter, plaintiffs' counsel declared before the trial court that the vandalism issue was "100 percent irrelevant," and that the "vandalism plays no role in the entitlement argument."

As the court explained in *Dockins*, a proof of loss will be deemed sufficient only "if the insurer could [ascertain its

obligations] through a reasonable investigation." 329 Or at 28. Here, there was no objective reason for defendant to investigate before this action was filed because, until then, the only claim that plaintiffs had asserted was excluded under the policy, and plaintiffs did not ask defendant to investigate a claim for any other damages. Thus, there was no "uncertain claim" that triggered defendant's duty to investigate. *Id.* at 29. Accordingly, we conclude that plaintiffs did not, either separately or in combination, make valid proofs of loss in their telephone calls to defendant's agent in April and May 2003.

 It follows that the service of plaintiffs' complaint after June 11 constituted the first qualifying proof of loss for plaintiffs' covered property damages. *Id.* at 33. Accordingly, if defendant's offer of judgment on December 10 constituted a tender within the meaning of ORS 742.061, it occurred less than six months after the filing of proof of loss, and plaintiffs are not entitled to attorney fees under the statute. Plaintiffs remonstrate that defendant's offer of judgment was not a "tender" for purposes of ORS 742.061, in that defendant conditioned its offer of settlement on the dismissal of all of plaintiffs' claims. For purposes of ORS 742.061(1), "tender" has been construed by the Supreme Court consistently with the common-law definition of the term. *Butler v. United Pacific Ins. Co.*, 265 Or 473, 479 n 3, 509 P2d 1184 (1973). Under the common-law definition, a tender is "an offer of payment that is coupled either with no conditions or only with conditions upon which the tendering party has a right to insist." *Fresk v. Kraemer*, 337 Or 513, 522, 99 P3d 282 (2004). In *Fresk,* the court held that a "condition of release from further liability for a plaintiff's underlying claim does not prevent a defendant's offer of payment from acting as an effective 'tender[.]' " *Id.* at 524.

Although *Fresk* involved the construction of the term "tender" in a different statute, ORS 20.080, that distinction is inconsequential. In *Fresk,* after examining the pertinent statutory context, the court applied the common-law meaning of the term to its use in ORS 20.080. *Id.* at 521-22. The court primarily distinguished *Butler*, a case decided under a predecessor statute to ORS 742.061, in this way:

"This court's decision in *Butler*, 265 Or 473, does not dictate a different result and, indeed, offers an example of a payment offer that did not qualify as an effective tender because it was subject to conditions to which the tendering party had no right to demand. In *Butler*, the plaintiff had obtained a judgment awarding him both compensatory and punitive damages against an automobile dealer. The plaintiff made a demand upon the dealer's surety to recover the full amount of the judgment against the dealer. *Id.* at 474. The defendant surety offered to pay the plaintiff only the amount of the compensatory damages award, but conditioned that offer upon the plaintiff releasing his claim against the dealer for both the compensatory and punitive damages awards. *Id.* at 479. The plaintiff refused that offer and brought an action against the defendant surety to recover the full amount of the judgment that he had obtained against the dealer.

"On review, this court concluded that the plaintiff was entitled to recover only the compensatory damages award from the defendant surety. *Id.* at 478. The court, however, also concluded that the defendant surety's prelitigation offer to pay the amount of the plaintiff's compensatory damages award did not defeat the plaintiff's claim to attorney fees under *former* ORS 743.114 (1971), stating that, '[t]o make it effectual, a tender must not be fettered with a condition, imposed by one making it, that a discharge shall be executed releasing him from all demands.' *Id.* at 479 (quoting *Purdin v. Hancock*, 67 Or 164, 166, 135 P 515 (1913) (internal quotation marks omitted)).

"We acknowledge that, in view of the similarities between the statute at issue in *Butler* and ORS 20.080(1), the above-quoted pronouncement in *Butler*, on its face, appears to support plaintiff's contention that a condition of release prevents an offer from qualifying as an effective 'tender' under ORS 20.080(1). Viewed in context, however, *Butler* does not stand for the proposition that an effective tender never can be subject to *any* condition of release from liability. In *Butler*, at the time of the defendant surety's offer, the plaintiff already had obtained enforceable judgments against the dealer entitling the plaintiff to recover the full amount of both the compensatory and punitive damages that the jury had awarded. The defendant surety, however, had conditioned its payment offer not only upon a release from the claim for the compensatory damages

award that the defendant surety covered, but also upon a release from the plaintiff's claim for the punitive damages award for which the surety was not liable. In view of those facts, the defendant surety demanded more than it was entitled to require as a condition to its payment, and, for that reason, its offer did not operate as an effective tender."

*Fresk*, 337 Or at 525-26 (emphasis in original; footnote omitted).

The logic of *Fresk* is controlling here. Defendant's offer of judgment was a "tender" within the meaning of ORS 742.061. Because it occurred less than six months after the filing of a qualifying proof of loss, plaintiffs are not entitled to attorney fees under the statute.

Reversed.