Argued and submitted September 30, decision of Court of Appeals reversed;
judgment of circuit court affirmed December 24, 2009

Eric PARKS
and Yolanda Parks,
*Petitioners on Review,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
*Respondent on Review.*

(CC 0306-06214; CA A127316; SC S055403)

227 P3d 1127

Kathryn H. Clarke, Portland, argued the cause and filed the brief for petitioners on review. With her on the brief was Robert E. L. Bonaparte, of Shenker & Bonaparte, LLP, Portland.

Beth Cupani, of Bullivant Houser Bailey PC, Portland, argued the cause and filed the brief for respondent on review.

GILLETTE, J.

**GILLETTE, J.**

This attorney fee dispute arises under ORS 742.061, which requires an insurer to pay an insured's reasonable attorney fees if (1) the insurer fails to settle the insured's claim within six months of the date that the insured files a "proof of loss," and (2) the insured brings an action against the insurer and recovers more than any tender that the insurer has made. The trial court awarded attorney fees to plaintiffs (the insureds) under that statute, based in part on its conclusion that certain telephone conversations between plaintiffs and their insurance agent constituted the requisite "proof of loss." The Court of Appeals reversed the award, holding that the telephone conversations could not amount to a "proof of loss" for purposes of ORS 742.061. *Parks v. Farmers Ins. Co.*, 214 Or App 1, 6-11, 162 P3d 1088 (2007). We allowed plaintiffs' petition for review, and now reverse the decision of the Court of Appeals.

Plaintiffs Eric and Yolanda Parks owned a rental property—a house—that was insured under a "Landlord Protector Package" policy issued by defendant Farmers Insurance Company of Oregon. In 2003, while the policy was in force, plaintiffs received notice that police had discovered a methamphetamine lab in the house, had seized the house and placed it under quarantine. Ms. Parks hired a decontamination contractor to evaluate the problem and deal with any damage to the house.

The contractor told Ms. Parks that insurance companies sometimes help with losses in such cases. On April 14, 2003, Ms. Parks called a Farmers agent, Pascone, whose business was in the town where the property was located, and asked if Farmers could "help [her] with [her] loss." There are some factual disputes about the content of that conversation, but it is undisputed that Ms. Parks told Pascone about the seizure of the methamphetamine lab and subsequent quarantine of the house, and that she provided Pascone with the address of the house and the name and telephone number of the decontamination contractor. Depending on whose testimony is credited, either Ms. Parks or Pascone suggested that there might not be coverage in the

policy for methamphetamine lab contamination. It is undisputed, however, that Pascone told Ms. Parks that "other things * * * might be covered," and that Ms. Parks should call her if she got any more information. Ms. Parks did not call Pascone again.

However, Mr. Parks called Pascone about a month later, on May 19, 2003. Mr. Parks told Pascone that a methamphetamine lab had been "busted" at his rental property at the end of April, that his wife already had called Pascone about the matter, and that, to date, he had paid $6,710 for cleaning up the property and had been quoted a figure of $2,000 to $3,000 to get the property in shape to rent. Mr. Parks testified that he asked Pascone to "reconsider the denial of the claim," and that Pascone told him that there was no coverage for the cleanup because the policy contained an exclusion for "pollution." Although Mr. Parks initially testified at deposition that he told Pascone that some of the damage to the property had been caused by vandalism, he later acknowledged that "all [he] told * * * Pascone about damage to the rental was the methamphetamine contamination."

Pascone's memory of the conversation with Mr. Parks was somewhat different. According to her, Mr. Parks told her that he and his wife did not want to file a claim because they felt that there was no coverage for the methamphetamine contamination and that the cost of repairing the other damage that he had described to her—two broken windows—would be less than the insurance policy's deductible. In any event, Pascone did not send any paperwork to Mr. Parks, did not refer him to Farmers' claims hotline, and did not otherwise tell him how to file a claim. Plaintiffs had no further contact with Farmers or its agents until June 11, 2003. On that date, plaintiffs brought an action against Farmers for, among other things, breach of Farmers' duties to them under the insurance policy.[1]

---

[1] Plaintiffs also alleged intentional interference with economic relations (specifically, that by failing to pay for the damage to the rental property, Farmers had interfered with plaintiffs' business relationships with their tenants and vendors that serviced the property) and negligent misrepresentation (specifically, that Farmers had negligently and erroneously represented to plaintiffs that the policy they were offering to them would cover any and all damage to the rental property, and that plaintiffs had relied upon that representation when they purchased the policy).

In their complaint, plaintiffs alleged that their rental property was insured by Farmers, that the property had suffered unspecified "accidental physical damage," that the losses suffered as a result of that damage were within the coverage of the policy, that Farmers had breached the insurance contract by denying coverage for those losses, and that, as a result of that breach of contract, plaintiffs had been damaged in the amount of $75,000—$70,000 in damage to the dwelling and $5,000 in loss of the property's rental value. Farmers filed an answer that raised, among other things, an affirmative defense that referred to policy wording that excluded coverage for "release, discharge or dispersal of contaminants, pollutants, * * * or hazardous gases or chemicals."

On October 16, 2003, plaintiffs sent a written settlement demand to Farmers seeking (among other things) $10,338 for vandalism damage, $10,000 for diminution in the value of the rental property, $12,000 for attorney fees, and $6,800 for methamphetamine cleanup costs. On November 19, Farmers sent a letter to plaintiffs that questioned some and outright rejected other aspects of plaintiffs' settlement demand. In that letter, Farmers stated that the "pollution exclusion at issue has previously been upheld by the Circuit Court of Multnomah County."

On December 10, 2003, Farmers made a settlement offer of its own—it offered "to allow entry of judgment against it and in favor of plaintiffs on all claims alleged in this matter in the total amount of $22,021.31," exclusive of any legally recoverable costs and attorney fees. Plaintiffs immediately accepted the offer and, on January 22, 2004, the circuit court entered judgment in accordance with the offer. Plaintiffs thereafter filed a petition for attorney fees under ORS 742.061, which provides, in part:

> "[I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

Plaintiffs' theory was that, for purposes of the statute, they had filed "proof of loss" by their April 14, 2003, and May 19, 2003, telephone calls to Pascone, and that Farmers had failed to tender its settlement offer within six months of those calls. Farmers denied that the telephone calls qualified as proof of loss and argued that, at best, plaintiffs had triggered the six-month period provided in ORS 742.061 when they filed their complaint on June 11, 2003. The trial court ultimately concluded that the Parks's telephone calls to Pascone and, particularly, Mr. Parks's May 19, 2003, call, constituted a sufficient proof of loss and entered a supplemental judgment awarding plaintiffs $50,000 in attorney fees. In explaining its decision, the court explicitly rejected Farmers' contention that, because those telephone calls pertained to methamphetamine contamination, they could not serve as "proof of loss" with respect to the losses that were at the heart of plaintiffs' action (and which Farmers characterized as vandalism losses). The court concluded that plaintiffs' claim for "accidental physical damage" included a claim for damage caused by methamphetamine contamination and that Farmers had not "knock[ed] out" that part of the claim prior to settlement.

Farmers appealed, arguing that plaintiffs' telephone calls to Pascone were not "proof of loss" within the meaning of ORS 742.061 for two reasons: (1) a "proof of loss" must be in writing; and (2) a "proof of loss" must allow an insurer to ascertain its liabilities, and plaintiffs' conversations with Pascone about methamphetamine contamination did not provide Farmers with any information that would have allowed it to ascertain its liabilities with respect to the only potentially covered loss that plaintiffs could claim—a claim for vandalism. The Court of Appeals essentially accepted the second reason, holding that the Parks's telephone calls did not and could not have served the essential purpose of a proof of loss, *viz.*, to allow the insurer to ascertain its liabilities, taking into account the insurer's obligation to investigate and clarify claims that are uncertain:

"Here, there was no objective reason for [Farmers] to investigate before this action was filed because, until then, the only claim that plaintiffs had asserted was excluded under

the policy, and plaintiffs did not ask [Farmers] to investigate a claim for any other damages. Thus, there was no 'uncertain claim' that triggered [Farmers'] duty to investigate."

*Parks*, 214 Or App at 11.

Before this court, plaintiffs argue that the Court of Appeals erred in assuming that the issue of coverage for methamphetamine contamination could not be considered "uncertain" and that a conversation that focused on that sort of damage would not provide any reason for an insurer to investigate further. They also continue to maintain that, contrary to Farmers' view, ORS 742.061 does not require that "proof of loss" be in writing. They insist, in short, that their telephone conversations with Pascone could and did constitute "proof of loss" and that, because Farmers' settlement offer, which they accepted, came more than six months after those conversations, the statute requires Farmers to pay their attorney fees.[2]

This is not the first time that this court has considered what ORS 742.061 requires by way of a "proof of loss." In *Dockins v. State Farm Ins. Co.*, 329 Or 20, 985 P2d 796 (1999), this court examined the statute and concluded that, when the legislature used that term, it intended something more than the particular form or submission an insurance policy might specify. *Id.* at 26-27. Based on prior cases dealing with the term, this court held that, in the context of ORS 742.061, "proof of loss" has a functional meaning—that is, it pertains to any "event or submission" that accomplishes the *purpose* of a proof of loss. That purpose, the court concluded, is " ' "to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay." ' " *Dockins*, 329 Or at 28 (quoting *Sutton v. Fire Insurance Exch.*, 265 Or 322, 325, 509 P2d 418 (1973) (quoting 14 Couch, Cyclopedia of Insurance

---

[2] Plaintiffs also contend that, even using their complaint as the "proof of loss" trigger, Farmers did not meet the six-month deadline in ORS 742.061 because its settlement offer did not qualify as a "tender" for purposes of that statute. Because we conclude that plaintiffs' telephone calls *did* constitute proof of loss, we need not consider that alternative argument.

Law § 49:373, p 15 (2nd ed))). This court further concluded (again, based on prior case law), that insurers operate under a duty of inquiry and that, "even if a submission is insufficient to allow the insurer to estimate its obligations, it will be deemed sufficient if the insurer could accomplish that purpose through reasonable investigation." *Dockins*, 329 Or at 28. Synthesizing those ideas into a single definition, this court announced that "[a]ny event or submission that would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims) qualifies as 'proof of loss' for purposes of [ORS 742.061]." *Id.* at 29.

More recently, in *Scott v. State Farm Mutual Auto. Ins.*, 345 Or 146, 190 P3d 372 (2008), the court applied the functional definition of "proof of loss" that it had announced in *Dockins* in the context of an uninsured motorist (UM) insurance claim. The plaintiff in *Scott* was injured in a car accident and, after discussing her coverage with one of her automobile insurer's claim representatives and providing a statement about the accident, submitted a claim for personal injury protection (PIP) on a form entitled "application for benefits" that the claim representative provided. The insurer processed the form for purposes of a PIP claim but did not forward it to the insurer's UM insurance department. About a month later, the plaintiff indicated to the claim representative that she might pursue a UM claim, and the claim representative instructed the plaintiff to sign and return a medical authorization form, which plaintiff did. The plaintiff later brought an action against the insurer, alleging that it had not paid UM benefits owed to the plaintiff and seeking attorney fees under ORS 742.061. Plaintiff asserted that her submission of an "application for benefits" on a form provided by the insurer constituted proof of loss for purposes of that statute. The Court of Appeals rejected that assertion, holding that, to constitute proof of loss with respect to a UM claim, the plaintiff was required to submit a written claim specifically stating her intention to pursue a UM claim, and that the "application for benefits," which had been submitted for purposes of a PIP claim, did not qualify. *Scott v. State Farm Mutual Auto. Ins.*, 213 Or App 351, 161 P3d 944 (2007). This court, however, relied on the functional meaning of the term "proof of

loss" that it had announced in *Dockins* and concluded that the plaintiff had provided "proof of loss" when she submitted the application for PIP benefits. *Scott*, 345 Or at 152-56. The court noted that the plaintiff would not have been aware of the insurer's practice of separately processing PIP and UM claims, that the insurer was aware that the plaintiff might want UM benefits, and that the insurer was in the best position to know to which coverage plaintiff was entitled. *Id.* at 156.

Plaintiffs in the present case have argued that their telephone calls to Pascone constituted "proof of loss" under the foregoing definition from *Dockins* and *Scott*—*i.e.*, that the information that plaintiffs supplied in those calls and that Farmers could have obtained in a reasonable investigation triggered by those calls was sufficient to permit Farmers to estimate its obligations *vis-à-vis* plaintiffs' obvious and/or uncertain claims. Farmers contends, however, that, even if the *content* of the telephone conversations was sufficient in that regard (and they deny that it was), the fact that the information was conveyed orally, and not in writing, is incompatible with a conclusion that it constituted a "proof of loss." Farmers contends that it is clear from the text and context of ORS 742.061 that, for purposes of triggering the six-month period in that statute, a "proof of loss" must be in writing.

In support of that argument, Farmers first points to the use of the term "filed" in conjunction with the phrase "proof of loss" ("if settlement is not made within six months from the date proof of loss is *filed* with an insurer"). Farmers suggests that the term "filed" strongly implies a writing. But while that may be true with respect to *court* filings, we are not persuaded that the term carries that same connotation in the world of insurance and beyond. Certainly, car and unemployment insurance claims often are "filed" orally by telephone, as are newspaper stories and ordinary complaints to businesses and government agencies. By itself, the use of the term "filed" is not persuasive.

Farmers also contends that "proof of loss," as it is used in ORS 742.061, involves a writing because that is how the term is used in other statutes in ORS chapter 742.

Farmers notes, for example, that ORS 742.053 requires insurers to furnish "forms of proof of loss" upon an insured's written request. It also notes that ORS 742.230, a statute that sets out certain provisions that must be included in fire insurance policies, requires "written notice" to the insurer of any loss and also requires that, "within 90 days after receipt of proof of loss *forms*," an insured "shall render to [the insurer] proof of loss, *signed* and sworn by the insured." Farmers argues that if "proof of loss" so clearly refers to a written instrument in those related statutes, it must have the same meaning in ORS 742.061.

In our view, however, the statutes that Farmers relies on do not support its point. Particularly in light of what this court said in *Dockins* about substantial, as opposed to formal, compliance with the "proof of loss" requirement in ORS 742.061, the fact that a related statute requires insurers to provide "proof of loss *forms*" upon an insured's request cannot mean that the only way to file "proof of loss" for purposes of the attorney fee statute is by means of similar forms. Neither does the fact that a statute that dictates that a particular kind of insurance policy (fire insurance) includes a provision that imposes specific "proof of loss" requirements (including that proof of loss be "signed") imply anything about what the legislature intended by the term "proof of loss" in an older and more broadly applicable statute like ORS 742.061.[3] In short, the "context" that Farmers points to is unhelpful.

Farmers argues, finally, that this court's own cases indicate that "proof of loss" must be in writing. In that regard, Farmers observes that, although this court has assigned a functional, rather than a formal, meaning to the term "proof of loss" in the context of ORS 742.061, it never has held that a telephone call, or any other "event or submission" that has not been reduced to writing, qualifies as proof of loss. Farmers points out that, even in *Dockins*, the "event or

---

[3] As we explained in *Scott*, ORS 742.061 was originally enacted in 1919 as General Laws of Oregon, chapter 110, sections 1 and 2, and, although it has been renumbered and amended over the years, the term "proof of loss" has remained the same. 345 Or at 155.

submission" that this court identified as sufficient proof of loss was a *written* document—a complaint.

■      But the fact that, in the handful of cases that have considered the meaning of ORS 742.061, this court has identified some written documents as sufficient "proof of loss" for purposes of the statute does not mean that we have concluded that *only* a writing is sufficient; it simply reflects that, heretofore, this court has had no reason to consider the issue. And, as we consider it now, we conclude that a writing requirement would be incompatible with a functional interpretation of the statutory term. An oral contact with an insurer can be just as effective as a writing in providing insurers with information adequate to allow insurers to make an intelligent estimate of their rights and liabilities. It also can provide an adequate opportunity to investigate before deciding whether to pay. We conclude that there is no requirement in ORS 742.061 that "proof of loss" be in writing.

■      That brings us to the ground upon which the Court of Appeals decision for Farmers actually rests, *viz.*, that the information that the Parks conveyed to Pascone in their telephone calls did not amount to "proof of loss" even under the functional definition set out in *Dockins*. The Court of Appeals correctly summarized that functional definition in terms of whether the information provided is sufficient to allow the insurer to estimate its obligations through a reasonable investigation. Applying that standard to plaintiffs' claim, the court then concluded that, because the two telephone calls to Pascone only addressed a type of loss that the court believed was *excluded* from coverage under a policy provision pertaining to damage caused by "pollutants,"[4] those calls could not qualify as "proof of loss." That was so, in the court's view, because the information imparted in the telephone calls would not permit Farmers to estimate its obligations with respect to any claim that *in fact* was covered by the

---

[4] The court "assumed" that the exclusion for damage from pollutants applied in the manner described, noting that (1) plaintiffs had not argued otherwise and (2) plaintiffs had not sufficiently "developed" an argument made at trial that, in light of the fact that the complaint alleged that all of plaintiffs' losses were covered under the policy and that the parties had settled "on all claims alleged in this matter," the actual legal application of the exclusion was irrelevant. *Parks*, 214 Or App at 8-9 n 6.

policy, and neither would it leave Farmers with a degree of uncertainty about its obligations that would trigger a duty to investigate further. *Parks*, 214 Or App at 8-11.

Before this court, plaintiffs argue that the Court of Appeals' analysis of the "uncertainty" of their claims is erroneous—that is, that, contrary to that court's position, the issue of coverage for methamphetamine lab cleanup costs under the policy at issue is far from "certain." They cite a number of cases in which the Court of Appeals has held that methamphetamine cleanup costs were *not* excluded under policy provisions that purported to exclude "contamination." They also note that the issue of coverage for methamphetamine contamination was never litigated in this case, either by a summary judgment motion, or otherwise. Plaintiffs conclude that a claim for methamphetamine contamination had not been foreclosed as a matter of law, and they argue that, in light of that fact, their telephone calls to Pascone, and, particularly, Mr. Parks's statements about the amount that he had paid and expected to pay in the future to clean up the damage from the lab, provided Farmers with enough information that it should have triggered an investigation into a contamination claim.

Farmers responds to that argument on two fronts. It contends, first, that plaintiffs' reliance on Mr. Parks's cleanup cost estimates is misguided, because the claim plaintiffs ultimately took to court did not involve a claim for methamphetamine contamination but, instead, was based on a claim for vandalism damage. Farmers argues that nothing in the Parks's telephone calls would have put it on notice of a potential claim for *that* sort of damage.[5] However, as plaintiffs point out, there is no support in the record for Farmers' supposition that the claims that plaintiffs brought and that both parties settled were only about vandalism damage. In fact, plaintiffs couched their complaint in very broad terms, simply alleging that their rental property had suffered "accidental physical damage" while it was covered by a policy

---

[5] Farmers notes that, in fact, Mr. Parks acknowledged in his deposition testimony that he was not concerned with vandalism damage at the time of the call, but was focused only on the methamphetamine cleanup costs.

issued by Farmers. Although the content and scope of "accidental physical damage" is not immediately obvious, it is clear that the term could refer to methamphetamine contamination just as easily as it could to vandalism damage. Moreover, it would appear from the depositions, correspondence, and filings in the record that Farmers had every reason to suspect that plaintiffs were including contamination damage in their claim. Still, Farmers made no attempt to remove that aspect of the claim from the case through a summary judgment motion, a motion to make more definite and certain, or other motion, before it settled "all claims alleged in this matter" with plaintiffs. Accordingly, we cannot accept Farmers' contention that plaintiffs' telephone calls to Pascone could not trigger a duty to investigate a potential claim.

Farmers argues that, even if there is some correlation between Mr. Parks's description of his damages in the May 19, 2003, telephone call and the damage that plaintiffs ultimately claimed in their legal action, the fact remains that those particular damages were excluded from coverage as a matter of law and, as such, could not trigger an obligation to investigate. Farmers relies, in that regard, on what it asserts to be the "plain" wording of the policy exclusion (which is quoted above, 347 Or at 378) and a single Court of Appeals case that purports to interpret substantially similar wording and that was reversed by this court on other grounds.[6]

We reject that line of reasoning because we do not accept its premise. Quite simply, we cannot say that the law surrounding this type of exclusion is so clear, and that the exclusion was so clearly applicable to the facts that Mr. Parks reported to Farmers' agent, that Farmers was relieved of any obligation to investigate further or, in the alternative, to litigate the matter before settling "all claims alleged in this matter."

In a related vein, Farmers contends that the Court of Appeals correctly "assumed" that plaintiffs' policy excluded coverage for methamphetamine contamination. *Parks*, 214

---

[6] Farmers refers to *Fleming v. United Services Automobile Assn.*, 144 Or App 1, 925 P2d 140 (1996), *rev'd on other grounds*, 329 Or 449, 988 P2d 378 (1999). *Fleming* involved an exclusion for "discharge, dispersal, seepage, migration, release or escape of pollutants."

Or App at 8. The Court of Appeals explained that assumption as arising from the fact that plaintiffs had never challenged the applicability of the methamphetamine exclusion, and did not argue that the policy provided coverage for methamphetamine claims. *Id.* The court acknowledged that plaintiffs *did* assert, at the attorney fee hearing, that, in light of the fact that their complaint *alleged* that all of their losses were covered under the policy and that Farmers had not moved to require more specificity, Farmers' settlement of "all claims alleged in this matter" encompassed decontamination damages. The court asserted, however, that plaintiffs had not "developed" that argument and, therefore, the court declined to address it, "except to observe that [Farmers] consistently rejected plaintiffs' assertion that the methamphetamine cleanup costs were covered under the policy, and there was no evidence that [Farmers] actually intended to compensate plaintiffs for those costs in making its offer of judgment." *Id.* at 8-9 n 6.

As we read the record of the attorney fee hearing, however, the latter statement is inapposite. The trial court explicitly stated its reasoning for granting the attorney fee request in the following terms:

> "The insurance company is contending that they had the ability to knock out the methamphetamine part of the claim, but they * * * didn't file a Rule 21, which they had time to do within the six months and get a ruling on it with our expedited courts[. I]f they [had] come in and said: Hey, we've got this six-month thing, we've got to get a hearing[,] Judge Baldwin would have found a judge. He did that to me last week. I got it done. They got a ruling. He then ruled in favor of the defense incidentally. Then they settled the case that day. So that's the way our system can work if people act quickly.

> "Now you've mentioned * * * you guys didn't think * * * to confer and ask [plaintiffs' attorney, ']You send us a letter at least telling us in detail what you are claiming, or we're going to file a motion to make more definite and certain at the least[.' S]o I'm going to rule in favor of the plaintiff on this."

From the foregoing ruling, it is clear that the trial court intended to compensate plaintiffs for attorney fees

associated with their claim for methamphetamine decontamination costs—not because it believed that those costs *actually* were covered by the policy in question (that issue never was litigated), but because Farmers had not taken appropriate steps to formally and legally remove them from the case before settling on "all claims alleged in this matter." Plaintiffs cannot be faulted for failing to "develop" the very argument that the trial court adopted to explain its ruling. The Court of Appeals was wrong to use that supposed failure as a basis for treating the exclusion of plaintiffs' decontamination costs as an established legal fact.

We hold that plaintiffs' telephone calls to Farmers' agent, and particularly, Mr. Parks's May 19, 2003, call reciting the amounts that he had paid and expected to pay to clean up the contamination caused by the methamphetamine lab, conveyed sufficient information to allow Farmers to ascertain its obligations *vis-à-vis* a possible claim for methamphetamine damage, taking into account Farmers' duty to investigate and clarify uncertain claims. That telephone call qualified as "proof of loss" for purposes of such a claim. Plaintiffs' action against Farmers for breach of an insurance policy included an allegation that Farmers was obligated, but refused, to pay a claim for methamphetamine damage, and that, in making a tender and ultimately settling "all claims alleged in this matter" without first removing that part of the claim from the case, Farmers settled the methamphetamine damage claim. It follows that plaintiffs provided "proof of loss" within the meaning of ORS 742.061 for their claim more than six months before December 10, 2003, when Farmers made the tender that settled the claim. Plaintiffs therefore are entitled to attorney fees under the statute.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.